**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

**ROCK HILL DIVISION**

| | | |
|---|---|---|
| VICKIE J. MCCREE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ARIANE MCCREE. | ) ) ) ) | Civil Action No.: 0:20-cv-00867-JMC-PJG |
| Plaintiff, | ) ) | **AMENDED COMPLAINT** |
| v. | ) ) ) | |
| CHESTER POLICE DEPARTMENT; CITY OF CHESTER; NICHOLAS A. HARRIS, in his individual capacity; JUSTIN M. BAKER, in his individual capacity; WALMART INC.; and WAL-MART STORES EAST, L.P., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Vickie J. McCree, as Personal Representative of the Estate of Ariane McCree, complaining of the above-named Defendants alleges and shows as follows:

**JURISDICTION AND VENUE**

1.      Decedent, Ariane Lamont McCree, at all times herein, was a citizen and resident of Chester County, South Carolina. Plaintiff Vickie J. McCree is the duly appointed Personal Representative of the Decedent's Estate which is being probated in Chester County. Plaintiff's certificate of appointment is attached hereto as Exhibit No. 1.

2.      At the time of his death, Ariane was a 28-year-old resident of Chester, having lived in this small community most of his life. Ariane was well-known and well-regarded in Chester as a talented athlete who had played NCAA Division I football at Jackson State University, a historically black college located in Mississippi. Ariane was also a loving father of his three-year old boy.

3.     Plaintiff brings this wrongful death action on behalf of Ariane's son pursuant to Section 15-51-10 of the South Carolina Code and brings this survival action on behalf of the Decedent's Estate pursuant to Section 15-5-90 of the South Carolina Code.

4.     Upon information and belief, the City of Chester is a duly authorized municipality created pursuant to the laws of the State of South Carolina.  At all times relevant hereto, the City of Chester, its agents, servants, and employees operated, maintained and controlled the Chester Police Department, including all police officers and employees thereof.  Upon information and belief, the City of Chester is responsible for the policies, practices and customs of the Chester Police Department as well as the hiring, training, supervising, controlling, and disciplining of its police officers and other employees.

5.     Upon information and belief, the Chester Police Department is a political subdivision of the City of Chester and is a municipal entity organized and created pursuant to the laws of the State of South Carolina.  Along with the City of Chester, the Chester Police Department is responsible for the policies, practices, and customs of the Chester Police Department as well as for the hiring, training, supervising, controlling and disciplining of its police officers and other employees.

6.     Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Nicholas Harris was a resident of Chester County, South Carolina, was a police officer assigned to the Chester Police Department, was employed by and an agent of the City of Chester, and was in police uniform, acting individually, and under the color of state law.

7.     Upon information and belief, at the various times giving rise to the causes of action set forth in this Complaint, Defendant Justin Baker was a resident of Chester County, South

Carolina, was a police officer assigned to the Chester Police Department, was employed by and an agent of the City of Chester, and was in police uniform, acting individually, and under the color of state law.

8.    Upon information and belief, Defendant Wal-Mart Stores East, L.P. is a foreign limited partnership authorized to conduct business in the State of South Carolina ("Wal-Mart Stores East").  At the various times giving rise to the causes of action set forth in this Complaint, Wal-Mart Stores East owned and/or operated the Wal-Mart store located at 1691 J.A. Cochran Bypass in Chester, South Carolina.

9.    Upon information and belief, Defendant Walmart Inc. is a foreign corporation authorized to conduct business in the State of South Carolina.  At the various times giving rise to the causes of action set forth in this Complaint, Walmart Inc. owned and/or operated the Wal-Mart store located at 1691 J.A. Cochran Bypass in Chester, South Carolina.

10.    At all times relevant, Walmart and Wal-Mart Stores East (collectively, "Walmart") acted in concert with each other and as agents for one another.

11.    This Court has subject matter jurisdiction over all claims alleged, personal jurisdiction over the parties, and venue is proper in Chester County.

## FACTUAL BACKGROUND

12.    On November 23, 2019, the Saturday morning before Thanksgiving, Ariane McCree was running errands and stopped by his neighborhood Walmart store on J.A. Cochran Bypass in Chester, South Carolina to purchase a new lock for a door that he planned to fix that day.

13.    After finding the item he needed, Ariane brought it to a checkout in the front of the store where a Walmart cashier scanned it and placed it in a bag for him.  Ariane then left the store.

3

14.    On information and belief, Ariane returned to the Walmart store a short time later after realizing the cashier forgot to charge him for the lock. Yet, on information and belief, immediately after walking back into the store, Ariane was confronted by Chester Police Department Officers who were at the store primarily to provide private security on behalf of and at the direction of Walmart.

15.    On information and belief, officers immediately detained and handcuffed Ariane and Defendant Harris escorted him to the loss prevention room located at the front of the Walmart store.

16.    On information and belief, Walmart authorized and entrusted Chester Police officers, including Defendant Harris, to have unfettered access to its loss prevention room, even providing him with a key and/or code to it so he could use the room alone for whatever purpose he deemed beneficial to Walmart.

17.    On information and belief, once inside the loss prevention room, Defendant Harris searched a handcuffed Ariane for weapons and began threatening him. At no time, however, had Ariane committed any crime or been accused by anyone of having committed a crime. Rather, on information and belief, Ariane tried to explain to Harris that he was simply returning to Walmart to pay for the lock after realizing the cashier's error in failing to ring it up.

18.    Indeed, Ariane was widely viewed in the community as an honest and selfless man who valued his integrity.

19.    On information and belief, however, Defendant Harris had no interest in the truth that Ariane was explaining to him; rather, he was there to punish this young man on behalf of Walmart, the multi-billion-dollar retailer that authorized him and other Chester Police Department officers to serve as its private store enforcers and to have free reign on its privately owned property.

20.     Before detaining, searching, handcuffing, and arresting Ariane, on information and belief, Defendant Harris conducted no independent investigation to determine whether he had committed any crime, such as speaking with the cashier who scanned and bagged Ariane's purchase to confirm her error.  Nor, on information and belief, did Defendant Harris make any effort to view Walmart store security footage to verify the truth Ariane was telling him.  Further, on information and belief, having just witnessed Ariane walk into the store, Defendant Harris had no independent legal justification to stop and detain him.

21.     Likewise, on information and belief, no Walmart employees intervened on Ariane's behalf to inform Defendant Harris that no crime had been committed and that Harris had no lawful reason to detain Ariane.

22.     Rather, on information and belief, after realizing the cashier's error, Walmart instructed and/or directed Harris and other off-duty Chester Police officers working security to immediately exercise their police authority to detain and arrest Ariane should he return to the store despite knowing he had committed no crime.

23.     On information and belief, Walmart store employees knew that Chester Police Department officers were present at the store to provide Walmart with private store security services despite being in official police uniform and also knew that the Chester Police Department and/or Officer Harris had a policy and/or practice of not independently investigating allegations of criminal activity occurring at the store raised by Walmart personnel prior to arresting people for such crimes.  Thus, on information and belief, Walmart had authority to bring its own criminal charges by initiating a complaint, knowing there would be no independent investigation of the allegations.

24.     Indeed, on information and belief, Walmart has a nationwide practice of increasing corporate profits by co-opting local police departments to provide private security at Walmart stores for Walmart's benefit at taxpayer expense.  In the words of one Wall Street retail analyst, "Law enforcement becomes in effect a taxpayer-paid private security source for Walmart."[1]

25.     On information and belief, the situation inside the loss prevention room escalated with threats and Ariane began fearing for his life.  Indeed, Ariane knew Walmart and Defendant Harris had no legal basis to detain him in the room let alone place him in handcuffs, but he also recognized that as a young African-American man he stood little chance of emerging from the situation unharmed—physically or legally.

26.     On information and belief, faced with threats and fearing for his life, Ariane had no safe option but to remove himself from the situation.  Despite being handcuffed, Ariane ran from the loss prevention room to the safety of the crowded Walmart parking lot where he hoped other shoppers would see what was happening and intervene to save him.

27.     Instead, on information and belief, Defendant Harris gave chase and was quickly joined by Defendant Baker and by Officer Lavar Richardson, who was also present at Walmart that morning to provide security on private store property despite being in uniform.

28.     Indeed, as Ariane exited through the front door of the store, his cell phone fell out of his pocket onto the ground.  A woman at the entrance immediately picked it up and handed it to a Chester police officer outside telling him, "that young man dropped his phone."  This officer, who on information and belief was Officer Richardson, took Ariane's cell phone from the woman, got into his cruiser, and then chased Ariane in the parking lot.

---

[1]     *See* https://projects.tampabay.com/projects/2016/public-safety/walmart-police/

29.    On information and belief, despite Ariane being handcuffed and having committed no crime, and despite Defendant Harris having previously searched Ariane for weapons in the loss prevention room, Defendant Harris—acting on behalf of Walmart— and Defendant Baker drew their weapons and began a firefight in the Walmart parking lot—indiscriminately shooting their guns at handcuffed Ariane as he frantically sought refuge behind parked cars.  One shopper's car was riddled with eight bullets.

30.    Ariane—hands cuffed, outnumbered, and terrorized by the armed officers shooting at him—was unable to find safety.

31.    On information and belief, bullets from the guns fired by Defendant Harris and Defendant Baker pierced Ariane's body.  He suffered gunshot wounds to his hip, arm, and chest and ultimately collapsed on the pavement

32.    After paramedics arrived at the scene to provide life support to Ariane, one of them turned to an officer to ask what happened.  The unnamed officer confessed that "he was shot with a .40 caliber bullet."

33.    Yet, despite Ariane being in critical condition, he remained in handcuffs until one of the paramedics demanded they be removed.

34.    Paramedics checked Ariane's vital signs, found he was alive, and began their life saving efforts.  They attempted to rush him to the trauma center in Rock Hill but had to divert the ambulance to a local hospital in Chester due to Ariane's deteriorating condition.

35.    Ariane was pronounced dead shortly after arriving at the hospital and just one hour after first arriving at Walmart to run his morning errands.

**FOR A FIRST CAUSE OF ACTION**
**(Negligence and Gross Negligence Against Defendants City of Chester,**
**Chester Police Department, Nicholas Harris, and Justin Baker)**

36.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

37.     Upon information and belief, Defendants owed statutory and common law duties to the public in general, and to Ariane McCree in particular, to use due care in fulfilling their law enforcement functions and duties and to ensure their conduct conformed to generally accepted police standards and the standards set forth by the Chester Police Department.

38.     On November 23, 2019, Defendants failed to use due care and were negligent as described above and in the following particulars:

    a.   Shooting and killing an unarmed and handcuffed individual;

    b.   Permitting Chester Police Department officers to conduct private security inside the Walmart store;

    c.   Conducting private security on behalf of Walmart;

    d.   Detaining Ariane at the store when they had no lawful basis to do so;

    e.   Handcuffing Ariane when they had no lawful basis to do so;

    f.   Failing to follow proper protocol and procedure for the situation;

    g.   Failing to use the appropriate degree of force for the situation;

    h.   Concluding that the immediate danger posed to the public by a handcuffed individual who had been searched for weapons outweighed the danger to the public in opening fire in a crowded store parking lot on a Saturday morning;

    i.   By drawing and discharging their firearms in a negligent manner and in violation of proper police procedure and protocol;

    j.   And other such particulars as may be shown at trial.

39.     All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, as well as these Defendants' obligations and duties to Ariane McCree.

40.     As a direct, foreseeable and proximate result of the aforementioned negligent, grossly negligent, reckless, willful and wanton acts and/or omissions by Defendants City of Chester, Chester Police Department, Harris, and Baker, Ariane McCree was needlessly shot, suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, emotional anguish and death.

41.     Due to the willful, wanton, reckless, grossly negligent, and negligent acts and/or omissions of Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

### FOR A SECOND CAUSE OF ACTION
**(Negligent Hiring, Supervision and/or Retention**
**Against the City of Chester and Chester Police Department)**

42.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

43.     Upon information and belief, the City of Chester and Chester Police Department owed statutory and common law duties to the public at large, and to Ariane McCree in particular, to refrain from negligently hiring, supervising and/or retaining employees.

44.     Upon information and belief, the City of Chester and Chester Police Department knew or reasonably should have known that Defendants Harris and Baker did not have the proper training, disposition, and/or temperament to handle stressful situations, to properly use firearms, or meet its departmental standards to the detriment of the public.

45.    In particular, on information and belief, these Defendants knew that Defendant Nicholas Harris's employment with the City of Chester and Chester Police Department was terminated in September 2013 for allegations of police misconduct during the course and scope of his employment; yet, these Defendants rehired him as a police officer for the Chester Police Department in 2018.

46.    Further, on information and belief, before rehiring Harris, the City of Chester and Chester Police Department knew that he had received several verbal and written warnings for failure to follow proper police policies and procedures from a neighboring police department that he joined after he was fired by the Chester Police Department.

47.    Further, on information and belief, these Defendants knew that Harris had been discharged from the U.S. Army after only six months of service for "entry level performance and conduct" issues before hiring him as a law enforcement officer.

48.    Further, on information and belief, these Defendants knew that Harris had a prior arrest for criminal domestic violence as a minor before hiring him as a law enforcement officer.

49.    Upon information and belief, and based upon Nicholas Harris and Justin Baker's work history, temperament, and disposition as law enforcement officers, and Harris's prior record of misconduct, Defendants City of Chester and Chester Police Department knew or should have known that hiring and retaining them as law enforcement officers for the City of Chester presented a danger to the public at large, and to Ariane McCree in particular, and that it was foreseeable that these officers would fail to perform their responsibilities in a reasonable manner that was consistent with Chester Police Department policies and procedures as well as generally accepted law enforcement procedure and protocol.

50.    In addition to hiring and retaining Defendants Harris and Baker, the City of Chester and Chester Police Department knew or should have known that their failure to provide adequate training to and supervision of these officers on proper procedures for interacting with citizens and the use of appropriate force would result in serious injury and/or death.

51.    In the hiring, retention, and supervision of Harris and Baker as law enforcement officers, the City of Chester and Chester Police Department failed to use due care and were negligent in the following particulars:

    a.    Rehiring Defendant Nicholas Harris as a Chester Police Department officer after previously terminating him for misconduct;

    b.    Failing to properly train Harris and Baker in the use of proper law enforcement procedure and protocol;

    c.    Permitting Harris to perform security work on private property for the benefit of Walmart;

    d.    Failing to adequately supervise Harris while he performed work at the Walmart store on Walmart's behalf;

    e.    Failing to coordinate and direct Harris to ensure he followed proper procedures for detaining an individual inside of the Walmart store;

    f.    Failing to properly equip and/or train police officers with the essential non-deadly force weapons to subdue subjects without deadly force; and

    g.    Any and all other particulars as may be shown at trial.

52.    As a direct, foreseeable and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Defendants City of Chester and Chester Police

Department, Ariane McCree suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, emotional anguish and death.

53.     Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Defendants City of Chester and Chester Police Department as set forth above, Plaintiff is entitled to recover actual and punitive damages as determined by a jury.

**FOR A THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Use of Excessive Force in Violation of Fourth Amendment Rights Against Defendants Nicholas Harris and Justin Baker)**

54.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

55.     At all times relevant hereto, Defendants Nicholas Harris and Justin Baker were sworn law enforcement officers with the Chester Police Department and acted under the color of state law and as such were each aware of his employer's policies and procedures as well as generally accepted policing standards. This cause of action is brought against them in their respective individual capacities.

56.     At all times relevant hereto, Defendants Harris and Baker knew or should have known that a law-abiding individual in handcuffs, under the facts and circumstances herein described, did not pose a substantial and immediate risk of serious physical injuries to others.

57.      Plaintiff is informed and believes, however, that Harris and Baker knew or should have known that indiscriminately and repeatedly discharging their firearms at Ariane McCree in a busy Walmart parking lot on a Saturday morning posed a substantial and immediate risk of serious injury or death to him.

12

58.     Plaintiff is further informed and believes that no reasonable police officer would have discharged a firearm in a busy Walmart parking at a handcuffed individual under the existing circumstances then and there prevailing.

59.     Decedent Ariane McCree was deprived of his rights, privileges and immunities safeguarded by the Fourth Amendment of the U.S. Constitution, particularly his right to be free from the use of excessive and unreasonable force by Defendants Harris and Baker.

60.     Upon information and belief, the excessive and deadly force that Ariane McCree was subjected to was employed by Defendants Harris and Baker in deliberate indifference to Ariane McCree's life and without any reasonable necessity to use any force, much less the excessive and deadly force that was employed without legal justification.

61.     As a direct result of Defendants Harris and Baker's unlawful use of excessive and unreasonable force, Ariane McCree was killed.

62.     As a direct and proximate result of Defendants Harris and Baker's violation of Decedent's constitutionally protected rights, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

### FOR A FOURTH CAUSE OF ACTION
**(42 U.S.C. § 1983 – Unlawful Seizure in Violation of Fourth Amendment Rights
Against Defendants Nicholas Harris and Justin Baker)**

63.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

64.     At all times relevant hereto, Defendants Nicholas Harris and Justin Baker were sworn law enforcement officers with the Chester Police Department and acted under the color of state law and exercised power possessed by virtue of state law as commissioned law enforcement officers.  This cause of action is brought against them in their respective individual capacities.

13

65.    Defendants' conduct as more fully set forth above deprived Ariane McCree of his rights, privileges or immunities secured by the Fourth Amendment to the Constitution of the United States.

66.    Particularly, Defendants Harris and Baker's conduct deprived Mr. McCree of his Fourth Amendment right guaranteeing all citizens the right "to be secure in their houses . . . against unreasonable . . . seizures."

67.    Defendants' unreasonable seizure of Mr. McCree inside of Walmart and, thereafter, in the Walmart parking lot was objectively unreasonable in light of the facts and circumstances then and there prevailing.

68.    As a direct and proximate result of this unlawful seizure by Defendants Harris and Baker, Ariane McCree suffered damages, including constitutional injuries, physical injuries, and tremendous irreparable emotional and mental harm, and death.

69.    As a direct and proximate result of Defendants Harris and Baker's violation of Decedent's constitutionally protected rights, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

### FOR A FIFTH CAUSE OF ACTION
#### (42 U.S.C. § 1983 – Bystander Liability
#### Against Defendants Nicholas Harris and Justin Baker

70.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

71.    At all times relevant hereto, Defendants Nicholas Harris and Justin Baker were sworn law enforcement officers with the Chester Police Department and acted under the color of state law and exercised power possessed by virtue of state law as commissioned law enforcement officers.  This cause of action is brought against them in their respective individual capacities.

14

72. During all relevant times herein, on information and belief, Defendants Harris and Baker were present during the unlawful seizure of Ariane McCree and/or during the fatal shooting of him.

73. On information and belief, Defendants Harris and Baker each had knowledge of and witnessed the conduct of each other in violating Mr. McCree's constitutional rights through application of an unlawful seizure and/or application of excessive force.

74. Defendants Harris and Baker each had the power to prevent a fellow officer's illegal acts, regardless of rank, as no Chester Police Department officer is entitled to violate the law or is otherwise required to obey unlawful orders.

75. On information and belief, Defendant Harris witnessed and had knowledge of the unlawful seizure and/or excessive force used on Mr. McCree by Defendant Baker and Officer Richardson; he had a reasonable opportunity to prevent such unlawful seizure and use of excessive force by his fellow officer, yet he chose not to act. As a direct and proximate result of his failure to intervene, Officer Baker continued to violate Mr. McCree's constitutional rights.

76. On information and belief, Defendant Justin Baker witnessed and had knowledge of the unlawful seizure and excessive force used on Ariane McCree by Defendant Nicholas Harris; he had a reasonable opportunity to prevent such unlawful seizure and use of excessive force by his fellow officer, yet he chose not to act. As a direct and proximate result of his failure to intervene, Officer Harris continued to violate Mr. McCree's constitutional rights.

77. As sworn law enforcement officers at the scene, each of these Defendants had a duty and obligation to prevent their fellow officers from unlawfully detaining Mr. McCree and to order them to cease their use of excessive force on him as soon as it began.

15

78.     As a direct and proximate result of the knowing, willful and gross failures by Defendants Harris and Baker in declining to intervene to stop the unlawful seizure of Ariane McCree and the unlawful use of excessive force on him, Mr. McCree suffered damages, including constitutional injuries, physical injuries, and tremendous and irreparable emotional and mental harm, and death.

79.     As a direct and proximate result of Defendants Harris and Baker's violation of Decedent's constitutionally protected rights, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

### FOR A SIXTH CAUSE OF ACTION
**(42 U.S.C. § 1983 – Violation of Decedent's Fourth Amendment Rights
Against Defendants Walmart and Wal-Mart Stores East)**

80.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

81.     On information and belief, Walmart and Wal-Mart Stores East, acting under of color of state law, by and through their policymakers, established and enforced a policy and/or practice of using, controlling, and directing law enforcement officers present in their stores to perform private security services on behalf of Walmart and, specifically, to cause certain shoppers to be detained, searched, arrested, and subject to physical force for shoplifting or other reasons without probable cause, regardless of whether such shoppers had or were alleged to have committed any crime.

82.     On information and belief, this policy and/or practice is motivated by Walmart's long-standing, nationwide effort to profit from its use of law enforcement officers to detain and arrest shoppers in order to coerce payments from them in exchange for not pressing charges. Under this program, on information and belief, accused shoplifters are presented with the choice of

paying hundreds of dollars to enroll in an online "restorative justice" class offered through a Walmart contractor (and through which Walmart receives payment), or face a criminal conviction for a crime many individuals, such as Ariane, did not commit.

83.    An Indiana prosecutor described Walmart's practice as "basically using the power of law enforcement—threats of arrest and [the prosecutor's office] to compel [accused shoppers] to take a class for a for-profit program."[2]

84.    On information and belief, Walmart and Wal-Mart Stores East, through their Vice President for Asset Protection and Safety, implemented this coercive policy across all Walmart stores, including the Chester, South Carolina store in which Ariane McCree was detained, beginning in April 2014.

85.    On information and belief, Walmart and Wal-Mart Stores East and their policymakers had actual or constructive knowledge of this policy and/or practice, among other ways, by virtue of proper exercise of their duty to be informed of such a policy or practice, prior litigation, news reports regarding arrests of citizens at Walmart stores, and other manifest opportunities to be informed of the policy and/or practice through its widespread application.

86.    Through this policy and/or practice, Walmart and Wal-Mart Stores East fostered and encouraged an atmosphere in which store employees directed and caused shoppers to which they held a personal animus, including Ariane McCree, to be detained, searched, and arrested by law enforcement officers without probable cause.  Despite knowledge of repeated allegations of civil rights violations of Walmart shoppers rendered under this corporate policy and/or practice, Walmart and Wal-Mart Stores East, intentionally or through deliberate indifference, failed to

---

[2]    Ron Wilkins, *At Walmart, $400 and 6 hours will make that shoplifting charge go away*, JOURNAL AND COURIER (July 27, 2017), available at: https://www.jconline.com/story/news/local/lafayette/2017/07/27/400-and-six-hours-make-shoplifting-charge-go-away/516599001/

establish procedures to ensure that its shoppers were not unlawfully detained, searched, arrested, or subject to physical force. To the contrary, Walmart and Wal-Mart Stores East used this policy and/or practice to lower overhead and increase corporate profits by reducing the need to employ paid security staff at their stores.

87.     Additionally, on information and belief, Walmart and Wal-Mart Stores East failed to exercise due care in training store employees who participated in or directed the detention and arrest of store patrons, including store employees in Chester who directed Defendant Harris and off-duty Chester Police Officers Richardson and Makeesharia Williams-Tobias to detain Ariane McCree, regarding the constitutional limitations on lawfully detaining shoppers.

88.     Given the known frequency in which Walmart and Wal-Mart Stores East, who operate over 4,000 stores nationwide, attempt to detain or direct law enforcement to detain shoppers in store loss prevention rooms on a daily basis, and the predictability that store employees who lack specific tools to handle such situations will violate shoppers' constitutional rights, Walmart and Wal-Mart Stores East's failure to train Chester store employees manifested a conscious disregard for Ariane McCree's constitutional rights

89.     As a direct and proximate result of these policies and/or practices and failure to train, Ariane McCree was unlawfully detained, searched, arrested, and subject to physical force and suffered damages, including constitutional injuries, physical injuries, and tremendous and irreparable emotional and mental harm, and death.

## FOR A SEVENTH CAUSE OF ACTION
### (Survival Action Against All Defendants)

90.     Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

91.    As a result of the above referenced acts and/or omissions, Decedent Ariane McCree sustained serious injuries ultimately causing his wrongful death.

92.    Pursuant to the South Carolina Survival Act, Plaintiff is entitled to bring all of the above-referenced and foregoing causes of action as the duly appointed Personal Representative of the Estate of Ariane McCree.

93.    Plaintiff alleges that as a result of the above referenced acts, Decedent Ariane McCree suffered conscious pain and suffering, personal injuries and trauma prior to his death, funeral expenses, and other compensatory damages, and is entitled to punitive damages in an amount to be determined by a jury.

94.    All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, and Defendants' obligations and duties to Plaintiff.

95.    Each of these acts and/or omissions and/or commissions proximately caused Ariane McCree's injuries and wrongful death.

96.    Consequently, Plaintiff seeks actual and punitive damages and such other and further relief this Honorable Court deems just and proper.

### FOR AN EIGHTH CAUSE OF ACTION
**(Wrongful Death Against All Defendants)**

97.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

98.    As a result of the above-referenced acts and/or omissions, Decedent Ariane McCree suffered conscious pain and suffering, personal injuries and trauma prior to his death.

99.     Pursuant to the South Carolina Wrongful Death Act, Plaintiff alleges entitlement to all of the above-referenced and foregoing causes of action as survivors and/or as the duly appointed Personal Representative of the Estate of Ariane McCree.

100.     As a direct and proximate result of Defendants' willful, wanton, reckless, grossly negligent and negligent acts as set out above, the Decedent's beneficiaries, as represented by Vickie McCree, Personal Representative of the Estate of Ariane McCree, have suffered injuries, which have caused, and in the future will cause, the beneficiaries to suffer one or more of the following elements of damage as to the survival and wrongful death claims:

    a.  Pecuniary loss;

    b.  Conscious pain and suffering;

    c.  Mental shock and suffering;

    d.  Wounded feelings;

    e.  Grief and sorrow;

    f.  Loss of companionship; and

    g.  Deprivation of use and comfort of Ariane McCree's society, including loss of his experience, knowledge, and judgment in managing the affairs of himself and his beneficiaries.

101.     Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Defendants as set out above, as well as his violation of state law, Plaintiff is entitled to compensation for funeral expenses and other compensatory damages and is entitled to punitive damages in an amount to be determined by a jury.

**<u>FOR A NINTH CAUSE OF ACTION</u>**
**(Negligence and Gross Negligence Against Defendants Walmart and Wal-Mart Stores East)**

102.   Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

103.   On November 23, 2019, Ariane McCree was a customer and business invitee at the Walmart store in Chester, SC owned and operated by Defendants Walmart and Wal-Mart Stores East.

104.   As owners and operators of the Walmart store described above, Walmart and Wal-Mart Stores East each owed statutory and common law duties to the public in general, and to Ariane McCree in particular, to ensure the safety and protection of their customers and business invitees.

105.   On November 23, 2019, on information and belief, Defendants Walmart and Wal-Mart Stores East failed to use due care and were negligent as described above and in the following particulars:

    a.   Engaging Chester Police Department officers to conduct private security services inside the Walmart store solely for Walmart's benefit;

    b.   Failing to provide adequate and properly trained security at the Walmart store;

    c.   Failing to conduct simple background checks on Defendant Harris before authorizing them to patrol their private store property;

    d.   Granting Defendant Harris and Officers Richardson and Williams-Tobias unfettered access to its private property, including providing them the key and/or code to enter and lock the store's loss prevention room unaccompanied by Walmart store employees;

    e.   Failing to use the accepted standard or practice within the private security industry regarding rules of engagement, detention, and pursuit;

f.   Failing to intervene when Mr. McCree was approached and detained by Defendant Harris;

g.   Failing to inform Defendant Harris or Officers Richardson and Williams-Tobias that Mr. McCree had not violated any laws at the time he was detained;

h.   And other such particulars as may be shown at trial.

106.   On information and belief, Defendant Harris and Officers Richardson and Williams-Tobias were present at the Walmart store for the primary purpose of providing private security to Walmart, rather than to provide general law enforcement services to the public.

107.   As owners and operators of the private Walmart store where Ariane McCree was detained and killed, on information and belief, Defendants Walmart and Wal-Mart Stores East directed and controlled Defendant Harris and Officers Richardson and Williams-Tobias while on their private property, including how, when, and where they could perform private security services inside the Walmart store and the manner in which they could interact with store customers while performing such services.

108.   Indeed, on information and belief, Walmart and Wal-Mart Stores East invited Defendant Harris and Officers Richardson and Williams-Tobias into the Walmart store and instructed and directed them on the manner in which they could provide store security for the benefit of Walmart.  Such direction and control included at a minimum, on information and belief, directing and instructing these individual defendants in the manner in which they could approach Walmart customers; authorizing these individual defendants to detain store customers for no apparent law enforcement purpose; providing these individual defendants with the key and/or security code to the loss prevention room; authorizing when, were, and under what circumstances

these individual defendants could use the loss prevention room, including authority to use this room unaccompanied by store employees for the benefit of Walmart.

109.    All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, as well as these Defendants' obligations and duties to Ariane McCree.

110.    As a direct, foreseeable and proximate result of the aforementioned negligent, grossly negligent, reckless, willful and wanton acts and/or omissions by Defendants Walmart and Wal-Mart Stores East, Decedent Ariane McCree was needlessly detained on Walmart property, unlawfully shot and killed on Walmart property, and suffered conscious physical harm and injury, endured pain and suffering, including mental distress, emotional anguish and death.

111.    Due to the willful, wanton, reckless, grossly negligent, and negligent acts and/or omissions of Defendants Walmart and Wal-Mart Stores East as set out above, Plaintiff is entitled to recover actual and punitive damages from Defendants as determined by a jury.

## FOR A TENTH CAUSE OF ACTION
### (False Arrest / False Imprisonment Against All Defendants)

112.    Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

113.    On November 23, 2019, on information and belief, Defendants Walmart and Wal-Mart Stores East, by and through their store managers and store associates, provided information to Defendant Harris and Officers Richardson and Williams-Tobias regarding Ariane McCree that they knew or should have known was false.

114.    Defendants Walmart and Wal-Mart Stores East, on information and belief, knew or should have known that this information would be used by Defendant Harris and Officers Richardson and Williams-Tobias to unlawfully detain Ariane McCree.

115.     Defendant Harris and Officers Richardson and Williams-Tobias, on information and belief, knew or should have known they had no lawful basis to stop, detain, search, and arrest Ariane McCree when he returned to the Walmart store.

116.     Defendants Walmart and Wal-Mart Stores East, on information and belief, had in their possession, custody, or control irrefutable evidence (such as surveillance video and cash register data) that Mr. McCree did not commit any crime on Walmart property.

117.     Nevertheless, on information and belief, Defendants Walmart and Wal-Mart Stores East suppressed or otherwise failed to disclose this critical information to Defendant Harris and Officers Richardson and Williams-Tobias. Likewise, on information and belief, Defendant Harris and Officers Richardson and Williams-Tobias were aware that Defendants Walmart and Wal-Mart Stores East possessed evidence regarding Mr. McCree's activity inside the Walmart store that would demonstrate his innocence, but declined to examine it.

**118.**     As a direct and proximate result of the false information the Walmart defendants provided to law enforcement, or as a direct and proximate result of the Walmart defendants' suppression of or failure to disclose relevant evidence to law enforcement, Ariane McCree was wrongfully arrested, detained inside of the Walmart store, deprived of his personal liberty, and suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a trial by jury and for the following:

i.     Judgment against Defendants, individually and joint and severally;

ii.     For actual damages, special damages, consequential damages, and treble damages in an amount to be determined by the jury;

iii.     For punitive damages, to be assessed individually and joint and severally, in an amount to be determined by the jury;

iv.     For costs of this action and reasonable attorney's fees;

v.      And for all such other and further relief this Honorable Court deems just and proper.

Respectfully submitted,

                                        **McLEOD LAW GROUP, LLC**

                                        BY:  s/ W. Mullins McLeod, Jr.
                                        W. Mullins McLeod, Jr., Bar No. 14148
                                        Colin V. Ram, Bar No. 103260
                                        P.O. Box 21624
                                        Charleston, SC 29413
                                        843-277-6655

                                        *Attorneys for Plaintiff*

November 4, 2020
Charleston, South Carolina