IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Vickie J. McCree, As Personal Representative of the Estate of Ariane L. McCree, <br><br> Plaintiff, <br><br> vs. <br><br> City of Chester; Nicholas A. Harris, in his individual capacity; Justin M. Baker, in his individual capacity; Walmart Inc.; and Wal-Mart Stores East, L.P., <br><br> Defendants. | Civil Action No. 0:20-CV-00867-JMC-PJG <br><br><br> **DEFENDANT WALMART INC. AND WAL-MART STORES EAST, L.P. MOTION TO EXCLUDE AND/OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, BILL BIRKS** |

COME NOW Defendants Walmart Inc. and Wal-Mart Stores East, L.P. (hereinafter, collectively, "Walmart"), by and through their undersigned counsel, who file this Motion to Exclude and/or Limit the Testimony of Plaintiff's Expert Witness, Bill Birks, pursuant to Federal Rules of Evidence 702, 703, and 403, as well as the standard set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Based upon the foregoing rules, appropriate case law, and reasons set forth more fully below, Mr. Birks' opinions are inadmissible and should be excluded.

## GOVERNING STANDARDS

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, [*5] training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts serve as gatekeepers for expert testimony. The court has a "special

1

obligation" to ensure that expert testimony is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) the court's gatekeeping role requires that it address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93. The court should consider several non-dispositive factors in determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. *See id.* at 593-94. In considering these factors, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. The factors are not exclusive; what factors are relevant to the analysis "depends upon the particular circumstances of the particular case at issue." *Kumho Tire*, 526 U.S. at 150. The second inquiry "goes primarily to relevance." *Daubert*, 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *Id.* at 593. The proponent of expert testimony must demonstrate that the testimony satisfies these requirements. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of the testimony must establish its admissibility by a preponderance of proof."). "[T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (quoting Fed. R. Evid. 702 advisory committee's note). While Rule 702 was intended to liberalize

the introduction of relevant expert evidence, courts "must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595).

The Daubert factors focus on an expert's methodology, but the Supreme Court has recognized that conclusions and methodology are not entirely distinct from one another: "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). The court must "verify that expert testimony is 'based on sufficient facts or data.'" *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (quoting Fed. R. Evid. 702(b)). Thus, "trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." *Id.*

As Rule 702 requires that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge," by negative implication, "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck, & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986). The Fourth Circuit applies the "common knowledge" rule, which finds expert testimony to be unnecessary when reaching the expert's opinion "is something that can sufficiently be done by the jury without help from an expert." *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995). This rule applies to both an expert's opinion that might help the jury determine the facts of the case and an expert's opinion that might help the jury interpret certain

3

evidence. *Minnesota Lawyers Mut. Ins. Co. v. Batzli*, 2010 U.S. Dist. LEXIS 14487, 2010 WL 670109, at \*2 (E.D. Va. Feb. 19, 2010) ("Where lay jurors are fully able to understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue[] and is therefore inappropriate."). The admission of "common sense" expert testimony is dangerous because "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Scott*, 789 F.2d at 1055. This is especially true with issues that are traditionally resolved by the jury. For example, issues of "foreseeability and reasonableness . . . are factual issues that lay jurors can independently understand and assess." *Minnesota Lawyers*, 2010 U.S. Dist. LEXIS 14487, 2010 WL 670109, at \*2; *see also Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 564 (S.D.W. Va. 2014), as amended (Oct. 29, 2014) ("The reasonableness of conduct and a party's then-existing state of mind 'are the sort of questions that lay jurors have been answering without expert assistance from time immemorial.'") (quoting *Kidder v. Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, 14 F.Supp.2d 391, 404 (S.D.N.Y. 1998)).

## ARGUMENT

In Plaintiff's expert disclosure, Plaintiff stated in pertinent part that Mr. Birks was expected to testify in the following manner:

> [C]onsistent with his written report as to Walmart store security policies and practices and related store security matters within his experience and training and regarding his knowledge and opinions pertaining to the facts alleged in Plaintiff's Complaint, additional pleadings, materials exchanged in discovery, and deposition testimony provided by witnesses upon scheduling and completion. The grounds of his opinions are based upon his education, employment experience, and review of case materials.

*See* Exhibit A, ECF 102.  Birks, in his written report, states that his opinions are to a reasonable degree of professional certainty and are based upon over forty years of experience as a security

4

professional. In his written report, he summarizes his opinions as follows:

> (1)     Consultant opines that, Wal-Mart had established a standard of care in the approach, apprehension and detention of shoplifters that was consistent with leading security industry practices as well as other retail establishments that were similarly situated. However, on the date and time of the subject incident, Wal-Mart failed to provide any of that knowledge, training, direction in the approach, apprehension, and detainment of suspected shoplifters to the off-duty police officers that were working as security agents in store #1603;
>
> (2)     Consultant opines that Wal-Mart and its agents Curtsinger, McManus, Harris, Richardson, Williams-Tobias, and Stevenson responded to the subject event with an inadequate standard of care required for the circumstances. That being said, further review of the documents and testimony presented in this case leads this consultant to conclude that McCree's life ending injuries were sustained as the direct result of the conduct of Curtsinger, McManus, Harris, Richardson, Williams-Tobias as well as Stevenson whose on-going inability to obtain payment from Wal-Mart after their purchases contributed to the incident.

*See* Exhibit B Birks Report, pg. 33-37.

Additionally, Birks included numerous other proffered opinions in his deposition and written expert report, as set forth more fully below, which are inadmissible under Rule 702 because (1) Birks is not qualified to render certain opinions because he lacks the specific knowledge required; (2) certain testimony is unreliable and speculative; and (3) certain testimony is not helpful to a jury and likely to mislead the jury. Accordingly, the Court should exclude these opinions at any trial of this matter.

**I.     Birks' opinions that the off-duty law enforcement officers were agents of Walmart and thus subject to industry, best practice guidelines and Walmart's policies regarding detention of shoplifters are unreliable and should be excluded.**

Birks opines that the off-duty law enforcement officers at the subject store were Walmart's "security agents," who were bound by Walmart's industry-standard policies and should have been trained on same. *See* Exhibit B Birks Report, pg. 12-15; *see* Exhibit C Birks Dep. Tr. 100:4 –

5

101:7; 140:24 – 144:13; 178:14 – 185:9; 188:16 – 191:17; 192:9-20; 196:15 – 198:6; 206:9 – 209:10; 219:6 – 220:21; 239:6 – 245:8.  Birks further opines that the off-duty law enforcement officers violated numerous aspects of Walmart's policies. *See* Birks Report, pg. 12-15; *see* Exhibit C Birks Dep. Tr. 100:4 – 101:7; 140:24 – 144:13; 178:14 – 185:9; 188:16 – 191:17; 192:9-20; 196:15 – 198:6; 206:9 – 209:10; 219:6 – 220:21; 239:6 – 245:8.  In support of these opinions, Birks relied upon the IAPSC, which promotes the guidelines utilized by Walmart and other retailers.[1]  *See* Exhibit B Birks Report, pg. 13; *See* Exhibit C Birks Dep. Tr. 121:2 – 122:3. Birks specifically cited IAPSC Best Practice No. 3, Detaining Shoplifting Suspects as consensus-based practices for the guidance of and voluntary use by business and individuals who deal or may deal with the issues of shoplifting and the apprehension of shoplifters.  *See* Birks Report, pg. 13.  In his deposition, Birks testified that IAPSC Best Practice No. 3 has been consistently peer reviewed and updated, but that the guidelines for security professionals are the same "all over the place." *See* Exhibit B Birks Report, pg. 13; *See* Exhibit C  Birks Dep. Tr. 121:2 – 122:3.

The definition section in the IAPSC Best Practice No. 3 specifically states as follows:

> Agent: The term "agent{s}" is intended to include **only** store plainclothes loss prevention/asset protection personnel, sometimes called "detectives," and uniformed security officers, also called "security guards" {either proprietary or contract}. The term **does not** include salesclerks, maintenance persons, stockers, or managers, unless trained and so designated.  The term "agent{s}" **is not intended to apply to off-duty public law enforcement or special police personnel unless they have been instructed by store management to follow the same procedures required of ordinary citizens, which does not include police powers of arrest.**

---

[1] Notably, Birks agrees that Walmart's policies regarding customer shoplifting are consistent with best practice guidelines.  *See* Exhibit B Birks Report, pg. 12-15; *see* Exhibit C Birks Dep. Tr. 100:4 – 101:7; 140:24 – 144:13; 178:14 – 185:9; 188:16 – 191:17; 192:9-20; 196:15 – 198:6; 206:9 – 209:10; 219:6 – 220:21; 239:6 – 245:8.

See *id.*, pg. 4 (emphases added).  It is undisputed that Officers Tobias, Richardson, and Harris were working as off-duty law enforcement officers on the date of the alleged incident.  *See* Birks Dep. Tr. 133:10 – 134:13. It is undisputed that Chester Police Department's policy for off-duty law enforcement officers required those off-duty law enforcement officers to respond as a primary officer to any reported criminal activity at the premises where they are working. *See* Birks Dep. Tr. 110:20 – 115:20; *see* Exhibit D, Chester Police Department Off-Duty Policy. The department further requires that all law enforcement officers who work off-duty law enforcement shifts must strictly adhere to the policy department's training, policies and procedures and not that of a private company. *See* Exhibit D, Chester Police Department Off-Duty Policy. It is also undisputed that Walmart did not instruct the off-duty law enforcement officers to follow the same procedures required of ordinary citizens and thus did not provide training to the law enforcement officers working at the subject store. *See* Exhibit C Birks Dep. Tr. 144:1-13; 192:15-22. Yet, when asked whether the off-duty law enforcement officers were definitionally excluded from IAPSC Best Practice No. 3, and thus not agents of Walmart pursuant to best practice guidelines, Birks disagreed and attempted to differentiate between an off-duty law enforcement officer working a "detail" versus an off-duty law enforcement officer performing some type of security function.  *See* Birks 123:14 – 137:15.

When asked for any writings, literature, and/or treatises that supported his proffered opinion that the off-duty law enforcement officers at the subject store were agents of Walmart despite falling under the exception to the definition in the IAPSC Best Practice No. 3, Birks testified there were none.  *See* Birks 137:21 – 138:22. When asked if it was Birks's opinion that the off-duty officers lost their law enforcement authorization when working an off-duty shift at the subject Walmart store, Birks testified he believed off-duty law enforcement officers maintain law

enforcement powers.  *See* Birks 295:13 – 296:13. Birks provided no methodology or support for his opinion that the off-duty law enforcement officers did not fall under the exception provided in IAPSC Best Practice No. 3. Birks' opinions in this regard can only be assumed to be personal opinions lacking any degree of professional certainty, which must be excluded from any trial of this matter.  *See* Rule 702, FRE (requiring that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge").

**II.     Birks' opinion that Walmart's failure to screen the off-duty law enforcement officer is a violation of best practice guidelines should be excluded.**

Birks opined that Walmart failed to properly screen the off-duty law enforcement officers, which violated "general policy."  *See* Birks Dep. Tr. 205:21 – 209:22. When asked for any literature, industry standard, or writings that requires or even assesses a retailer's duty to screen and/or train of-duty law enforcement, Birks conceded there were none.  *See* Birks Dep. Tr. 206:9 – 209:10; 220:24 – 222:9; 247:11 – 248:21; 254:13-25. When asked what he relied upon for his opinion, he stated he relied upon "general policy" and "doing the right thing."  *See* Birks Dep. Tr. 205:21 – 209:22.

Once again, Birks is not presenting an expert opinion based upon any specialized knowledge and instead is presenting his personal opinion.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 2795 (1993) (ruling that an expert may only provide expert testimony where his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," but "the word 'knowledge' connotes more than subjective belief or unsupported speculation."); *see also Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.2d 137, 142 (4th Cir. 1994) (explaining that an "expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record"); *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 593 (E.D. Va. 2013)

8

("An expert's subjective beliefs, his speculation, and his hunches are not admissible expert testimony."). Accordingly, this opinion is not helpful to the jury and must be excluded at trial.

**III.    Birks' opinions of the Decedent's subjective state of mind should be excluded as they are unreliable and purely speculative; thus, they are unhelpful to a jury.**

Birks opines that there is no evidence that the Decedent intended to intentionally deprive Walmart out of the value of the lock set. *See* Birks Dep. Tr. 147:7 – 148:6. He further opined that the Decedent was "honest who wanted to pay for the merchandise." *See* Birks Dep. Tr. 262:11-19.

When asked for the basis of his opinions regarding the Decedent's specific intent at any given time, Birks stated that his opinion was based upon the surveillance video and the fact that the Decedent returned to the store to pay for the merchandise; however, Birks also acknowledged he did not know if there is any way to determine the Decedent's specific intent, which establishes that he cannot proffer such opinions to a reasonable degree of professional certainty. *See* Birks Dep. Tr. 147:7 – 148:6; 282:3 – 21; 296:20 – 298:21. Birks' opinions as to the Decedent's intent are pure speculation with no basis on any specialized knowledge that he has, and such opinions supplant the purpose of the jury in assessing Plaintiff's actions. A jury is well-equipped to evaluate the testimony of the fact witnesses present at the subject store on the date of the alleged incident to assess what the Decedent's intent may have been and whether the store and/or law enforcement was reasonable in their actions. Thus, any testimony from Birks regarding the Decedent's specific intent should be excluded from trial.

**IV.    Birks' opinions that Walmart's failure to adequately train the cashier contributed to the ultimate death of the Decedent are legal conclusions based upon speculation and conjecture and is beyond the scope of his expertise; thus, they should be excluded.**

Birks opined that due to the disciplinary history of Joshua Stevenson and Walmart's failure to adequately train Stevenson, it was **possible** that Stevenson improperly handled the transaction

9

at the register thus leading to an inappropriate arrest and ultimate death of the Decedent.  *See* Birks Dep. Tr. 156:14 – 167:16; 256:6-19; 258:5 – 259:2. This is pure conjecture.

As a threshold matter, Birks must be precluded from testifying as to the proximate cause of the Decedent's death as such an opinion is not helpful to the jury and is a legal conclusion reserved for the jury in determining negligence.  *See United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) ("Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination."); *see also Kopf v. Skyrm*, 993 F.2d 374, 377-78 (4th Cir. 1993) (stating that while "an opinion is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact, . . . such an opinion may be excluded if it is not helpful to the trier of fact under Rule 702") (internal quotation omitted); *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("It is, therefore, apparent that testimony offering nothing more than a legal conclusion--i.e., testimony that does little more than tell the jury what result to reach--is properly excluded under the Rules."); Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2001) ("The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness . . . . The testimony supplies the jury with no information other than the witness's view of how the verdict should read."). Birks, a proffered expert in the area of retail premises security, also lacks the specific knowledge required to opine as to proximate cause.

Notwithstanding, Birks couched his own opinion that Stevenson mishandled the register transaction as a possibility rather than to a reasonable degree of professional certainty, which renders it inadmissible. *See* Birks Dep. Tr. 156:14 – 167:16; 256:6-19; 258:5 – 259:2. Regardless, when asked for the basis of these opinions, Birks testified that Stevenson's disciplinary history reflected Stevenson was involved in three or four prior instances where he failed to ask for payment from the customer.  *See* Birks Dep. Tr. 162:4-16.  However, Birks then conceded that the three to

10

four instances all in fact occurred on a single date, December 13, 2015, nearly four years before the alleged incident. *See* Birks Dep. Tr. 162:2 – 167:16. He further conceded the evidence reflected that Walmart disciplined and retrained Stevenson following the December 13, 2015 incident. *See* Birks Dep. Tr. 165:20 – 167:6; 256:6 – 258:4. Upon prompting from Plaintiff's counsel, Birks mistakenly identified an annual evaluation of Stevenson in April 2019 as a disciplinary action and then testified that based upon the annual evaluation,[2] there were likely other incidents similar to the December 13, 2015 that were not reflected on his disciplinary history. *See* Birks Dep. Tr. 314:5 – 316:23. But Birks was unable to provide any information to support such an inference. Birks' opinion that Stevenson mishandled the transaction at the register on the date of the alleged incident is based solely upon a disciplinary action that occurred ***four years earlier*** and a vague reference in one annual evaluation that indicated Stevenson could improve certain processes and procedures. Birks' testimony is thus purely speculative; accordingly, it is inappropriate for admission at trial and should be excluded. *See E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) ("[T]rial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable," and " may exclude an opinion if "there is simply too great an analytical gap between the data and the opinion offered.").

Birks also testified that he relied upon the surveillance video in forming his opinion that Stevenson mishandled the register transaction on the date of the alleged incident, because

> [Stevenson] gives the bag to Mr. McCree. Mr. McCree grabs the
> bag, walks out the door, and he [Stevenson] put his hands down like
> everything is okay. And all the sudden, he must have hit him, geez,

---

[2] The annual evaluation reflected that "Joshua [Stevenson] does a great job at servicing his customers. However, Joshua [Stevenson] does need to work on retaining info pertaining to performing certain process and procedures on the register." *See* Exhibit C Birks Dep. Tr. 314:5 – 316:23.

11

> I forgot to – I forgot to take money.  And that's when he puts his –
> appears to look when put his hands up in the air.

*See* Exhibit C Birks Dep. Tr. 162:9 – 163:9. Birks' interpretation of the surveillance video[3] is

purely speculative and in complete contradiction to the testimony of the only eyewitness at the

register who has been deposed, Stevenson.  Such proffered expert testimony is extremely

misleading and unhelpful to the jury, who will be able to view the surveillance video themselves

and make conclusions therefrom.

Ultimately, Birks asks this Court to allow him to use speculation upon speculation in

forming his opinion that Walmart's alleged inadequate training of Stevenson led to the Decedent's

death, without the use of any underlying methodology or specialized training, knowledge, and/or

experience.  Thus, such opinions must be excluded at trial.

**V.    Birks' opinions as to the appropriateness of the off-duty law enforcement officer's use of force and the credentials of a law enforcement officer are beyond his expertise; thus, those opinions should be excluded.**

Birks testified at length as to law enforcement procedures, as follows: (1) the store's report

of a suspected shoplifting did not constitute a valid report of a crime to law enforcement; (2) law

enforcement would not respond to a misdemeanor; (3) the off-duty law enforcement officers

weren't responding to a crime but in fact illegally detained the Decedent; (4) off-duty law

enforcement officers were negligent in using firearms against the Decedent; (5) one of the off-duty

law enforcement officers was not properly credentialed to make a legal arrest.  *See* Exhibit C Birks

Dep. Tr. 109:7 – 118:23; 195:2-19; 205:1-19; 334:17 – 340:3; 373:3 – 374:12.

Birks is not qualified to render these opinions.  He acknowledges that he is not a law

enforcement or legal expert. *See* Exhibit C Birks Dep. Tr. 104:21-24. When asked for the basis for

---

[3] The surveillance video does not provide any audio recording.

his opinion about the manner in which one must report a crime in South Carolina before law enforcement can act upon it, Birks testified as follows:

> Well, I think what I'm trying to say is you said report a crime, and report a crime to me sounds like you either need to go to the police and report a crime to the police, call it in, or go down to the magistrate and say, hey, here's my set of fact, and based on that facts, the magistrate looks at it and steps -- and either decides to send out a warrant or not.··And given the set of these facts, if I was a magistrate . . . .

*See* Exhibit C Birks Dep. Tr. 113:8 – 117:25. As shown in this testimony, Birks consistently proffered purported law enforcement opinions, and even the role of a magistrate, that are ultimately personal opinion based upon speculation. These opinions fall far outside of Birks' experience as a security profession; Birks has no training, education, or experience in the procedures and statutory law governing a magistrate or a law enforcement officer in the state of South Carolina. Accordingly, he is not qualified to provide expert opinions on law enforcement practices and the law, and the Court should exclude this inadmissible testimony.

**VI.     Birks' opinion that there must be an inventory discrepancy to establish a shoplifting occurred is beyond his expertise and unreliable.**

Birks opined that "[t]he only way that you can have a loss in the retail business is to show a loss" through accounting of inventory discrepancies. *See* Exhibit C Birks Dep. Tr. 214:23 – 218:15; *See* Birks Report pg. 33.  When asked for the basis of this particular opinion, Birks acknowledged that there was no policy implemented by Walmart or industry standard, best practice guidelines, literature, or articles to support his opinion in this regard.  *See* Exhibit C Birks Dep. Tr. 214:23 – 218:15.

Birks is not a law enforcement or legal expert. His opinion that a retailer must show a statistical inventory loss through its accounting ***before*** that retailer can report an instance of suspected shoplifting to law enforcement is not based upon any reliable methodology in premises

13

security and appears to be his personal opinion, which is inadmissible at trial.[4] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 2795 (1993) (ruling that an expert may only provide expert testimony where his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," but "the word 'knowledge' connotes more than subjective belief or unsupported speculation."); *see also Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.2d 137, 142 (4th Cir. 1994) (explaining that an "expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record"); *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 593 (E.D. Va. 2013) ("An expert's subjective beliefs, his speculation, and his hunches are not admissible expert testimony."). Thus, Walmart asks that the Court exclude any such opinions at the trial of this matter.

**VII.     Birks' testimony that certain witnesses are more credible than others is inappropriate expert testimony that usurps the function of the jury.**

Birks testified several times that certain witnesses' testimonies were "substantiated" or "unsubstantiated," or that certain witnesses simply were not credible.  As an example, Birks testified as follows regarding Stevenson's credibility:

> Well, I have to tell you, that's what Mr. Stevenson said.  Again, this is an individual who has a history of failing to take money from customers for payment.  And, you know, I think what you do is you do your best maybe to blame the customer.  I don't know.  That's what I'm thinking.  I don't know.[5]

---

[4] Birks's personal opinion would require Walmart to perform an inventory of the thousands of items of merchandise housed within a store's over one hundred thousand square feet *every time* a suspected shoplifting incident occurred to determine any statistical discrepancies in inventory prior to being entitled to report that suspected shoplifting to law enforcement.  *See* Exhibit C Birks Dep. Tr. 214:23 – 217:10; 232:15-17.

[5] As discussed in a previous section, Birks then conceded that Stevenson's "history of failing to take money from customers for payment" consisted of three to four instances that all in fact occurred on a single date, December 13, 2015, nearly four years before the alleged incident.  See Exhibit C Birks Dep. Tr. 162:2 – 167:16. Birks further conceded the evidence established that

*See* Exhibit C Birks Dep. Tr. 162:17 – 163:9. Further, Birks characterized certain information as being substantiated when he deemed a particular witness credible while characterizing other evidence as being unsubstantiated when he deemed a particular witness not to be credible. *See* Exhibit C Birks Dep. 69:3 – 75:19. Notably, he testified that he included facts in his report based upon his determination of credibility of witnesses and "what [he] thought the facts were." *See* Exhibit C Birks Dep. Tr. 75:2-19.

This testimony is not helpful to a jury and is inadmissible because the assessment of a witness's credibility is within the jury's exclusive purview. *See United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996) ("Absent unusual circumstances, expert medical testimony concerning the truthfulness or credibility of a witness is inadmissible . . . because it invades the jury's province to make credibility determinations."); *see also United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) ("[T]he credibility of witnesses is generally not an appropriate subject for expert testimony."); *United States v. Whitted*, 11 F.3d 782, 785-86 (8th Cir. 1993) ("A doctor . . . cannot pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility."); *United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982) (en banc) ("Credibility determinations are for the jury."); *Garcia v. GEICO Gen. Ins. Co.*, 807 F.3d 1228, 1234 (11th Cir. 2015) ("A court may exclude evidence as improper bolstering when the purpose of the evidence is to vouch for a witness's credibility."). Accordingly, this testimony should be excluded. Walmart further submits that given Birks's admission that he only relied upon the facts as he believed them to be based upon his assessment of the credibility of witnesses, all of his opinions should be excluded as unreliable.

---

Walmart disciplined and retrained Stevenson following the December 13, 2015 incident. See Exhibit C Birks Dep. Tr. 165:20 – 167:6; 256:6 – 258:4.

15

**CONCLUSION**

For the reasons set forth above, Birks's proffered opinions and testimony should be excluded under Rule 702 because (1) Birks is not qualified to render certain opinions; (2) certain testimony is unreliable and speculative; and (3) certain testimony is not helpful to a jury and is likely to mislead the jury. Accordingly, the Court should exclude these opinions at any trial of this matter.

s/Randi Lynn Roberts
Regina Hollins Lewis, Federal ID No. 7553
rlewis@gaffneylewis.com
Randi Lynn Roberts, Federal ID No. 12462
rlroberts@gaffneylewis.com
Nashiba Boyd, Federal ID No. 11408
nboyd@gaffneylewis.com
**GAFFNEYLEWIS LLC**
3700 Forest Drive, Suite 400
Columbia, South Carolina 29204
(803) 790-8838

*Attorneys for Walmart Inc. and Wal-Mart Stores East, L.P.*

April 25 2022