IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Vickie J. McCree, As Personal Representative of the Estate of Ariane L. McCree,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>City of Chester; Nicholas A. Harris, in his individual capacity; Justin M. Baker, in his individual capacity; Walmart Inc.; and Wal-Mart Stores East, L.P.,<br><br>　　　　Defendants. | Civil Action No. 0:20-CV-00867-JMC-PJG<br><br><br>**DEFENDANT WALMART INC. AND WAL-MART STORES EAST, L.P. MOTION TO EXCLUDE AND/OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, DR. ROY TAYLOR** |

COME NOW Defendants Walmart Inc. and Wal-Mart Stores East, L.P. (hereinafter, collectively, "Walmart"), by and through their undersigned counsel, who file this Motion to Exclude and/or Limit the Testimony of Plaintiff's Expert Witness, Roy Taylor, Ph.D., pursuant to Federal Rules of Evidence 104(a), 702, 703, and 403, as well as the standard set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).　Based upon the foregoing rules, appropriate case law, and reasons set forth more fully below, Dr. Taylor's opinions are inadmissible and should be excluded.

## GOVERNING STANDARDS

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, [*5] training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts serve as gatekeepers for expert testimony. The court has a "special

1

obligation" to ensure that expert testimony is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) the court's gatekeeping role requires that it address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592- 93. The court should consider several non-dispositive factors in determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. *See id.* at 593-94. In considering these factors, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. The factors are not exclusive; what factors are relevant to the analysis "depends upon the particular circumstances of the particular case at issue." *Kumho Tire*, 526 U.S. at 150. The second inquiry "goes primarily to relevance." *Daubert*, 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *Id.* at 593. The proponent of expert testimony must demonstrate that the testimony satisfies these requirements. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of the testimony must establish its admissibility by a preponderance of proof."). "[T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (quoting Fed. R. Evid. 702 advisory committee's note). While Rule 702 was intended to liberalize

2

the introduction of relevant expert evidence, courts "must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595).

The Daubert factors focus on an expert's methodology, but the Supreme Court has recognized that conclusions and methodology are not entirely distinct from one another: "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).  The court must "verify that expert testimony is 'based on sufficient facts or data.'" *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (quoting Fed. R. Evid. 702(b)). Thus, "trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." *Id.*

As Rule 702 requires that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge," by negative implication, "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck, & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986). The Fourth Circuit applies the "common knowledge" rule, which finds expert testimony to be unnecessary when reaching the expert's opinion "is something that can sufficiently be done by the jury without help from an expert." *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995). This rule applies to both an expert's opinion that might help the jury determine the facts of the case and an expert's opinion that might help the jury interpret certain

evidence. *Minnesota Lawyers Mut. Ins. Co. v. Batzli*, 2010 U.S. Dist. LEXIS 14487, 2010 WL 670109, at *2 (E.D. Va. Feb. 19, 2010) ("Where lay jurors are fully able to understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue[] and is therefore inappropriate."). The admission of "common sense" expert testimony is dangerous because "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Scott*, 789 F.2d at 1055. This is especially true with issues that are traditionally resolved by the jury. For example, issues of "foreseeability and reasonableness . . . are factual issues that lay jurors can independently understand and assess." *Minnesota Lawyers*, 2010 U.S. Dist. LEXIS 14487, 2010 WL 670109, at *2; *see also Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 564 (S.D.W. Va. 2014), as amended (Oct. 29, 2014) ("The reasonableness of conduct and a party's then-existing state of mind 'are the sort of questions that lay jurors have been answering without expert assistance from time immemorial.'") (quoting *Kidder v. Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, 14 F.Supp.2d 391, 404 (S.D.N.Y. 1998)).

## ARGUMENT

In Plaintiff's expert disclosure, Plaintiff stated in pertinent part:

> Roy Taylor is a professional law enforcement manager with over forty (40) years of experience in federal, state, local and private Police Chief positions. His areas of expertise include law enforcement training, use of force and firearms instruction, recruiting, employee selection, assignment, supervision, evaluation and retention, curriculum development, policies and procedures design and implementation, anti-terrorism, operation security, force protection, physical security, canine utilization, budgeting, public relations and emergency management. He is presently employed as the Chief of Police Blue Ridge Public Safety and the Use of Force Director at Compliant Technologies.
>
> He is expected to testify consistent with his written report as to law enforcement practices and related matters within his experience and

> training regarding his knowledge and opinions pertaining to the facts alleged in Plaintiff's Complaint, additional pleadings, materials exchanged in discovery, and deposition testimony provided by witnesses upon scheduling and completion. The grounds of his opinions are based upon his education, employment experience, and review of case materials. His qualifications can be found in his curriculum vitae.

*See* Exhibit A, ECF 102.  Dr. Taylor, in his written report, states that he was retained by Plaintiff's counsel to render opinions as to whether Defendants acted in accordance with established law enforcement standards.  *See* Exhibit B, Taylor Report, pg. 1.  As to his specific qualifications to provide opinions on the present matter, Dr. Taylor stated as follows:

> During my forty-year law enforcement career and my twenty-six years as a law enforcement executive and trainer, I have reviewed more than one hundred police-involved use of force cases. I have trained thousands of law enforcement officers on the legal and professional standards regulating the use of force, search, seizure, and arrest. My complete CV is attached as Appendix A to this report.

*See id.*  Dr. Taylor proceeds to detail information that he considers facts in his report and then sets forth his proffered opinions, Paragraph 35 through Paragraph 56.  *See id.* at pgs. 4-10.

Dr. Taylor proffered numerous opinions in his deposition and written expert report pertaining to Walmart, as set forth more fully below, which are inadmissible under Federal Civil Rules of Evidence because (1) Dr. Taylor is not qualified to render certain opinions; (2) certain testimony is unreliable and speculative; and (3) certain testimony is not helpful to a jury and likely to mislead the jury.

**I.     Dr. Taylor's opinion, set forth in Paragraph 37, 38, and 41 that the off-duty law enforcement officers were acting as agents of Walmart falls outside of his expertise.**

In the section of his written report titled, "Opinions," Dr. Taylor sets forth the following statements in Paragraph 37, 38, and 41:

> 37.     In my expert opinion, based on the facts of this case as determined by a comprehensive review of the materials I believe the

5

actions of Sgt. Harris, Ofc. Richardson, and Ofc. Williams-Tobias were not consistent with accepted law enforcement training and well-established law enforcement standards regarding the investigation of a misdemeanor larceny. All three of these officers were off-duty, not wearing a standard police uniform with all of their issued equipment, and working as Agents for Walmart loss prevention. Each of them were paid with a money order after every shift which the store cashed for them.

38.     Neither Walmart #1603 nor the Chester Police Department provided these off-duty officers with policies and procedures or training specific to their duties as Agents for Walmart loss prevention. This is evidenced by Ofc. Richardson stating that he was not sure if he was supposed to wear his body worn camera when working off duty jobs.

. . .

41.     Sgt. Harris testified in his deposition that "Walmart is a victim of being shoplifted against and if they want to prosecute that is within their rights and that's my – wasn't even my charge, it was their charge. And if they wanted to pursue that and charge Mr. McCree with it, then that is what we do." In my opinion, this statement corroborates the fact that these officers are using their law enforcement authority for the benefit of their off-duty employer Walmart, and not the citizens of Chester, SC who vest them with that authority. Standard police procedure would be to inform the victim to seek a warrant or criminal summons from a Magistrate since the misdemeanor crime was committed outside of the officer's presence.

. . .

*See* Exhibit B Taylor Report, pg. 8.

The Court should exclude these opinions as they relate to Dr. Taylor's testimony that the off-duty law enforcement officers were working as agents for Walmart and that Walmart failed to provide the off-duty law enforcement officers with training as agents of Walmart. Dr. Taylor was disclosed as a professional law enforcement manager and retained to assess whether the law enforcement officers acted in accordance with law enforcement standards.  Dr. Taylor admits that he is not retained in this matter as a retail security expert but then attempts to expand the scope of

his expertise by testifying that he worked for over twelve (12) years managing private security for a Walmart in another state. *See* Taylor Dep. 253:11 – 254:9. Based on his deposition testimony, he owned a private security company through which Walmart would hire security but the security officers were not off-duty law enforcement officers. *See* Exhibit C Taylor Dep. Tr. 250:17 – 252:24. His experience owning a private security company in another state does not render him an expert in retail industry guidelines as it relates to retaining off-duty law enforcement officers through a governmental entity. Further, as the basis for his proffered opinions regarding Walmart's duties as a retailer, Dr. Taylor continues to use the lens of law enforcement procedure rather than retail industry guidelines, stating for example: "In my opinion, again, as a law enforcement exep – experien - expert and executive would be that, in this factual situation had I been the police chief, it would be, Walmart needs to go down and get a warrant for this subject or a summons for this subject." *See* Exhibit C Taylor Dep. Tr. 248:22 – 252:1. Thus, Dr. Taylor improperly attempts to offer his testimony in the areas of retail premises security while using law enforcement policies and procedures as support for those proffered opinions and testimony. His expertise in law enforcement procedures do not qualify him to speak to the legal concept of agency as it relates to a retailer and his expertise does not qualify him to speak to industry guidelines for retailers related to shoplifting.

Further, the purported opinions set forth in Paragraph 37, 38, and 41 as they relate to Walmart simply recite facts from limited sources without any application of specialized knowledge or experience to help the jury understand the facts in evidence. Dr. Taylor states in his written report that (1) Walmart paid each off-duty law enforcement officer with a money order after every shift, which the off-duty officers cashed at the store and (2) Walmart did not train the off-duty law enforcement officers. Not only does the aforementioned testimony fail to qualify as an expert

opinion, none of the aforementioned facts relate or support Dr. Taylor's ultimate use of force opinions for which he was retained. See *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (holding that an expert's opinion must be relevant, and an expert cannot offer testimony irrelevant to admissible opinions.); *Blue Cross & Blue Shield of S.C. v. W.R. Grace & Co.*, 781 F. Supp. 420, 427 (D.S.C. 1991) ("The expert must rely upon the evidence in question for it to be admissible."). Plaintiff is not permitted to use Dr. Taylor to cherry pick certain facts out of the record and present those as expert opinions, particularly when those facts don't support the ultimate opinions within his proffered field of expertise, which is law enforcement procedures.

Additionally, Dr. Taylor's testimony as set forth above are unreliable and not based upon sufficient facts or data. Dr. Taylor fails to cite any methodology, industry standards, articles, or any other materials that support his general opinion that the off-duty law enforcement officers in this case were agents of Walmart. Dr. Taylor acknowledged multiple times he was not an expert in retail industry guidelines. Further, Dr. Taylor admitted that he (1) had not read the depositions of store manager Ann Curtsinger, asset protection manager Evelyn McManus, and cashier Joshua Stevenson; (2) had not reviewed any Walmart policies and procedures in connection with this matter; (3) had not seen surveillance video that shows Ariane McCree (hereinafter, "Decedent") return to the store on the date of the alleged incident to the time Decedent was handcuffed by off-duty law enforcement officers; (4) had not read transcripts from the depositions of Officer Makeesharia Tobias-Williams (hereinafter Officer Tobias) or Officer Lavar Richardson (hereinafter "Officer Richardson"), two of the three off-duty law enforcement officers who were present at the subject store on the date of the alleged incident; and (5) had not watched the recorded interviews taken of Officer Tobias. *See* Exhibit C Taylor Dep. Tr. 8:7-24; 237:1 – 238:25, 242:3-21, 247:1-20. Accordingly, these purported expert opinions are not based upon sufficient facts or

data and should be excluded.

**II.     Dr. Taylor's opinion regarding the Decedent's intent as set forth within Paragraph 43 should be excluded as it is not based upon any reliable methodology, specialized knowledge, and/or specialized expertise; thus, such testimony is unhelpful to a jury.**

In the section titled "Opinions" of his written report, Taylor sets forth an opinion in Paragraph 43, which states:

> Mr. McCree earlier on November 23, 2019 did not pay for a door knob set. According to the cashier, Mr. McCree said "put this on my tab." Less than two hours later he returned to the store and spoke with Ofc. Williams-Tobias, who he knew was a law enforcement officer, and ask how much he owed for the door knob. Ofc. Williams-Tobias stated that Mr. McCree had money in his hand to pay for the item, but that Walmart was not going to accept it and he was then placed under arrest by Ofc. Richardson and Sgt. Harris. Mr. McCree's action of returning to the store with money and offering to pay for the merchandise indicates he did not have any intent of depriving the store of that property.

As a threshold matter, Dr. Taylor simply recounts purported facts and presents those facts as expert opinions, which is inappropriate. *See* Exhibit C Taylor Dep. Tr. 243:13 – 244:21. Officer Tobias was deposed and can testify regarding her personal knowledge of the alleged incident before a jury. His testimony in this regard is unhelpful to a jury and should be excluded.

Additionally, Dr. Taylor's opinion that Decedent's return to the store with money and offering to pay for merchandise indicated that Decedent did not have any intent to deprive the store of property is not based on any methodology, treatise, or specialized knowledge.[1] *See* Exhibit C

---

[1] To the extent that Dr. Taylor proffers this opinion to support his testimony that law enforcement unlawfully arrested Decedent for the charge of shoplifting, Dr. Taylor's testimony regarding South Carolina's shoplifting statute should be excluded as well, as he has no expertise or specialized knowledge as to South Carolina state law. *See* Exhibit C Taylor Dep. Tr. 239:1 – 241:21; 264:1-7; 266:1- 267:14. Indeed, Dr. Taylor continuously opined that the shoplifting statute required that a person intend to "permanently deprive" a retailer of merchandise although the word "permanently" is not found within the South Carolina statute for shoplifting. *See* Exhibit C Taylor Dep. 98:3-23, 99:8-15, 117:16 – 118:4, 209:1-17, 239:21 – 241:21.

9

Taylor Dep. Tr. 268:5-15, 271:19-25; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 2795 (1993) (ruling that an expert may only provide expert testimony where his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," but "the word 'knowledge' connotes more than subjective belief or unsupported speculation.").   Instead, Dr. Taylor is simply presenting his personal opinion as an expert opinion, which is unhelpful and misleading to a jury; accordingly, it should be excluded.

**III.     Dr. Taylor's opinion set forth in Paragraph 56 as it relates to Walmart is not supported by the evidence and is partly a legal conclusion; thus, it should be excluded.**

In the section titled "Opinions" of his written report, Taylor sets forth an opinion in Paragraph 56, which states:

> Sgt. Harris, Ofc. Richardson, and Ofc. Williams-Tobias were taking orders from the Walmart Loss Prevention Manager instead of following accepted law enforcement practices of investigating and then seeking criminal charges for a misdemeanor committed out of their presence. These actions resulted in an escalation of events that lead to the shooting death of Mr. Ariane McCree.

*See* Exhibit B Taylor's Report, pg. 10; *see also* Exhibit C Taylor Dep. Tr. 272:6 – 274:6.  The final sentence of Dr. Taylor's opinion in Paragraph 56 is a legal conclusion as to the proximate cause of Decedent's death and/or damages, which should be excluded as such an opinion is not helpful to the jury and is a legal conclusion reserved for the jury in determining negligence.  *See United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) ("Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination."); *see also Kopf v. Skyrm*, 993 F.2d 374, 377-78 (4th Cir. 1993) (stating that while "an opinion is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact, . . . such an opinion may be excluded if it is not helpful to the trier of fact under Rule 702") (internal quotation omitted); *Woods v.*

*Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("It is, therefore, apparent that testimony offering nothing more than a legal conclusion--i.e., testimony that does little more than tell the jury what result to reach--is properly excluded under the Rules."); Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2001) ("The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness . . . . The testimony supplies the jury with no information other than the witness's view of how the verdict should read.").

Additionally, Dr. Taylor's opinion as to Walmart's actions in this matter is not based upon sufficient facts or data. When asked for each order that the off-duty law enforcement officers took from a loss prevention manager, Dr. Taylor testified that (1) the store stated that it would not accept payment from Decedent when he returned to the store; (2) the store wanted Decedent charged; and (3) the store wanted Decedent trespassed. *See* Exhibit C Taylor Dep. Tr. 272:6- 274:6. However, as noted earlier, Dr. Taylor did not consider or read the sworn testimony of any Walmart witness in forming his opinions. *See* Exhibit C Taylor Dep. Tr. 237:1 – 238:6. At the time of his deposition, Dr. Taylor was not in possession and had not reviewed the deposition transcripts of Officer Keesharia Tobias-Williams (hereinafter Officer Tobias) or Officer Lavar Richardson (hereinafter "Officer Richardson"), two of the three off-duty law enforcement officers who were present at the subject store on the date of the alleged incident. Thus, Dr. Taylor's opinion about Walmart's actions is solely based on written statements made on the date of the alleged incident, which were prepared for the South Carolina Law Enforcement Division's investigation into law enforcement's use of force at the time of the alleged incident. Further, the first "order"—that the store would not accept payment from Decedent—is not even an order to law enforcement,[2] and as to the second

---

[2] An order is generally defined as a mandate, command, direction authoritatively given. *See* Black's Law Dictionary, Order.

11

and third orders, Officer Richardson testified that he determined that probable cause existed to arrest Decedent based upon his investigation into the reported shoplifting and that no Walmart associate told him to arrest, prosecute, and/or trespass Decedent upon Decedent's return to the subject store. Accordingly, Dr. Taylor's opinion as to Walmart's actions is not based on sufficient facts and/or data and is also misleading for the jury.

## CONCLUSION

For the reasons set forth above, Dr. Taylor's proffered opinions and testimony should be excluded under Rule 702 because (1) Dr. Taylor is not qualified to render certain opinions; (2) certain testimony is unreliable and speculative; and (3) certain testimony is not helpful to a jury and likely to mislead the jury. Accordingly, the Court should exclude these opinions at any trial of this matter.

*s/Randi Lynn Roberts*
Regina Hollins Lewis, Federal ID No. 7553
rlewis@gaffneylewis.com
Randi Lynn Roberts, Federal ID No. 12462
rlroberts@gaffneylewis.com
Nashiba Boyd, Federal ID No. 11408
nboyd@gaffneylewis.com
**GAFFNEYLEWIS LLC**
3700 Forest Drive, Suite 400
Columbia, South Carolina 29204
(803) 790-8838

*Attorneys for Walmart Inc. and Wal-Mart Stores East, L.P.*

April 25, 2022