# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Vickie J. McCree, *as Personal Representative of the Estate of Ariane L. McCree*, | Civil Action No.: 0:20-cv-00867-JMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| City of Chester; Wal-Mart Inc.; Wal-Mart Stores East, L.P.; Justin M. Baker, *in his individual capacity*; Nicholas Harris, *in his individual capacity*, | |
| Defendants. | |

Before the court is Plaintiff's Motion to Compel, pursuant to Fed. R. Civ. P. 26(b) and 37, seeking an order compelling Defendant Wal-Mart Stores East, L.P. ("Wal-Mart") to provide full and complete responses to Plaintiff's Second Set of Interrogatories and Fourth Set of Requests for Production of Documents. (ECF No. 123 at 1.) A Motion Hearing was held on April 29, 2022, where the court orally ruled on several of the pending requests.

Plaintiff brought this suit as Personal Representative of the Estate of Ariane L. McCree, in the Chester County Court of Common Pleas. (*See* ECF No. 1.) Defendants removed this action on February 27, 2020. (ECF No. 1-1.) This case arises out of the fatal shooting of Ariane McCree ("the decedent") at a Wal-Mart store in Chester, South Carolina, by Chester Police Officers Justin M. Baker and Nicholas Harris. (*Id.*) Plaintiff brings various claims under the South Carolina Torts Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-10 *et seq.* (West 2022), and 42 U.S.C. § 1983 against Wal-Mart, the officers, and separately, the City of Chester and the Chester Police Department. (*Id.*)

1

I.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are adopted from the Complaint. (ECF No. 1-1.) On November 23, 2019, Ariane McCree stopped in a neighborhood Wal-Mart store in Chester, South Carolina to purchase a door lock. (ECF No. 1 at 5 ¶ 13.) McCree went through the checkout line and a Wal-Mart cashier scanned and bagged the item. (*Id*. at 5 ¶ 14.) McCree then left the store without paying but returned shortly after realizing the cashier had not charged him for the lock.[1] (*Id*. at 5 ¶ 15.) As he re-entered the store, McCree was immediately detained by Sergeant Harris of the Chester Police Department, who was working as security in the store. (*Id*. at 5 ¶¶ 15-16.) Harris escorted McCree to the loss prevention room at the front of the store, where McCree was searched for weapons and handcuffed. (*Id*. at 5 ¶ 18.) Plaintiff alleges Harris threatened McCree without conducting any investigation, for example by speaking to the cashier or reviewing security footage from the incident to determine whether McCree had actually committed a crime or whether the matter was a mere misunderstanding. (*Id*. at 6 ¶ 21.) The security camera footage from the loss prevention room shows that McCree and Harris briefly scuffled in the room. (ECF No. 129 at 2.) McCree then ran from the loss prevention room into the parking lot, followed closely by Harris and two other officers also working security in the store. (ECF No. 1-1 at 7 ¶¶ 26-28.) The three officers started shooting at McCree as he attempted to find cover behind cars. (*Id*. at 8 ¶¶ 29-32.) They shot McCree in the hip, arm, and chest, and one hour after arriving at Wal-Mart that day, McCree died in the emergency room of a nearby hospital. (*Id*. at 7-8 ¶¶ 33-36.)

---

[1] Defendants allege that Plaintiff never intended to pay for the lock, telling the cashier instead to "put it on his tab." (ECF No. 129 at 1.)

## II. ANALYSIS

Plaintiff seeks to compel Wal-Mart to respond to an Interrogatory and multiple Requests for Production ("RFPs"). The court considers each request in turn, to determine whether Plaintiff has demonstrated that the sought information is relevant to a claim or defense and proportional to the needs of the case. The court also notes whether the parties have indicated that a particular request was already fulfilled by Wal-Mart, or if the court already ruled on a request during the April 29 Hearing.

### 1. Requests for Production

#### A. Request No. 32

**RFP No. 32 seeks documents pertaining to the disciplinary history of three Wal-Mart employees, including store manager Ann Curtsinger, loss prevention and asset protection manager Evelyn McManus, and Joshua Stevenson, the cashier who interacted with the decedent the day he was killed by officers on Wal-Mart premises.**

Plaintiff alleges that Stevenson had been disciplined in the past for failing to ring up customer purchases, and that his disciplinary history is relevant to Plaintiff's assertion that the decedent was not actually stealing at the time he walked out of the store. Wal-Mart counters that all documentation related to Stevenson's disciplinary history has already been produced in the form of a spreadsheet in which it is maintained in the ordinary course of business. During the April 29 Hearing, the court accepted Wal-Mart's representation that the requisite information had been produced. To the extent any additional documents related to the disciplinary history of these three employees are located, the court hereby **ORDERS** their prompt production, consistent with the court's directions as expressed in this Order and during the April 29 Hearing.

#### B. Requests No. 29 and 12

**RFP No. 29 seeks the production of complaints, memoranda, and reports of complaints regarding loss prevention and general store security at the subject Wal-**

3

**Mart store between November 23, 2015, and November 24, 2019.  (ECF No. 123 at 10.)**

Plaintiff clarified that this request includes complaints related to the actions of asset protection personnel, covering both private security contractors and off-duty law enforcement officers.  Though both sides agree that this information has been produced, Plaintiff contends the production is rife with redactions: it does not provide, for instance, the names and contact information of the complainant customers, and the names of the officers or security personnel involved in each incident.  Plaintiff argues she is therefore unable to contact witnesses for past security-related incidents to get a complete picture of how asset protection issues have been handled at this store in the relevant period.  Similarly, RFP No. 12 seeks information related to "accusations or allegations of theft, shoplifting, or other property taking crime" from the subject Wal-Mart store for the five-year period preceding the shooting death of the decedent.  (*Id*. at 3-4.)  As an example, Plaintiff cites an incident where a customer complained about the arrest of a pregnant Black woman for allegedly letting her child eat a plum before entering the checkout line.  The complainant specifically stated that the security official who made the arrest did not allow the complainant to pay for the plum, insisting that the store was pressing charges.  Wal-Mart responded to the complaint by informing the complainant that in fact, the woman had neither been arrested nor prosecuted for any crime.  Here, the court finds that the very fact of a dispute between the version of events conveyed by the complaining customer and the contrary assurances in Wal-Mart's response indicates that further discovery is necessary to allow Plaintiff to determine whether a history of overzealous policing and prosecution for theft existed at the subject store.  Wal-Mart's argument that the store's policies regarding theft have already been produced are unavailing to the extent that the practical experiences of disinterested customers may prove these policies were either disregarded or applied differently on the ground.  Wal-Mart's unilateral

4

assertion that the complaining customer had misapprehended what happened to the pregnant woman is insufficient to bar further scrutiny by Plaintiff into this and other complaints, because Wal-Mart's statements are as self-serving now as they were at the time they were made, in an attempt to persuade a complaining customer that the misconduct they observed did not, in fact, take place.  Because this information is relevant to how this Wal-Mart store's security policies were actually enforced in *practice*, Plaintiff is entitled to this information, including the contact information of witnesses and security officials involved in incidents that may illustrate how store security policies were actually applied.

Further, Wal-Mart's privacy-based arguments are unpersuasive.  Plaintiff highlighted that a confidentiality order is already in place in this case, and therefore, concerns regarding the complainants' privacy are misplaced.  Thus, the redaction of names, contact information, and security officer information appears to be unnecessary.  Wal-Mart is **ORDERED** to produce all documents, communications, and other information responsive to RFP Nos. 12 and 29, *without redaction*.  All production will be covered by the confidentiality order to protect the privacy interests of the witnesses and customers involved.

### C. Request No. 23

**This request deals with various training materials offered to Wal-Mart employees involved in this case.**

Wal-Mart produced an Excel spreadsheet which shows the dates and times the named employees received various trainings, but argues that Plaintiff's broad requests for production cover training topics that are not directly related to the issues in this case (shoplifting, asset protection, and "mistaken" failures to pay due to customer or cashier error).

Plaintiff counters that despite her attempt to narrow these requests by conferring with Wal-Mart counsel and clarifying which topics each training module actually covers, Wal-Mart has

failed to produce training videos related to these relevant topics. Wal-Mart responded that some of these materials had been produced immediately before the hearing. The court emphasized that any training materials presented to the three employees at the heart of the case, related to shoplifting, asset protection, failures to pay by mistake or error, detention and prosecution, and other related topics, would need to be produced. The court requested that Plaintiff refer again to the subtitle headings of the training videos, as listed on the Excel spreadsheet, to delineate specifically which videos she needs, conferring with Wal-Mart's counsel as necessary to understand what topics are covered in each training module. Where a particular training module is related to the issues in this case, the court **ORDERS** Wal-Mart to produce it promptly, in accordance with this Order and the court's instructions at the April 29 Hearing.

### D. Request No. 14

**This request relates to Wal-Mart's internal communications regarding store security, including the use of off-duty law enforcement officers in lieu of internal security employees.**

Plaintiff seeks emails sent between the Chester Police Department and a specific Wal-Mart email address designated for correspondence with local police departments and third-party security providers. Wal-Mart counters that the officers were only contracted to work at the store in light of a domestic dispute between an employee and her romantic partner shortly before the death of Mr. McCree. But Plaintiff argues that deposition testimony from the police officers involved in this case demonstrated they had a broader mandate to provide general store security at the time they were contracted by the subject store. During the April 29 Hearing, the court emphasized that emails related to the hiring of third-party security at the subject store are relevant to Plaintiff's claims. Further, because this request is narrowly delineated and targets only emails sent to or from a designated Wal-Mart email address created for this specific use, the court **ORDERS** the

production of any emails related to third-party security (such as off-duty police officers), including emails describing the purposes for which they were hired or contours and scope of their duties.

### E. Request Nos. 5 and 6

**These requests seek copies of "shrink numbers," or numbers and records of items lost to theft, from the subject Wal-Mart store, and the monthly shrink numbers for the subject store for each month in 2019. (ECF No. 123 at 3.)**

Plaintiff argues that this production is relevant because the scope of Wal-Mart's loss from theft can help explain whether the role of third-party security was largely to prevent theft, or to address a domestic dispute between a store employee and a romantic partner, as alleged. (*Id*.) Wal-Mart responds that it provided average numbers for "smash and grab" shoplifting incidents at the check-out counter (which it believes to be most similar to the incident in this case) for the five year period preceding Mr. McCree's killing, along with "gross" shrinkage numbers presented on an annual basis. Further, Wal-Mart contends that this information is not relevant because it includes loss of inventory from price markdowns, transportation, and other issues unrelated to shoplifting. Based on Wal-Mart's indication that it produced the shrink numbers from "smash and grab" shoplifting incidents, it appears that the shrink numbers for the broader category encompassing all shoplifting incidents can similarly be extracted from the gross averages that have already been produced to Plaintiff. While the narrow category of "smash and grab" type shoplifting incidents is relevant to how Defendants have characterized these facts, Plaintiff alleges that this incident did not involve shoplifting at all, arising instead from the decedent's mistaken failure to pay, or the cashier's failure to properly ring up the decedent's purchase. Therefore, shrink numbers related to all shoplifting claims should be produced in conjunction with shrink numbers related to incidents where a customer failed to pay for an item due to mistake or cashier error. To the extent possible, these categories should be separated from the gross averages

7

produced to Plaintiff. However, the court agrees that the total shrink numbers, which include non-asset protection or loss prevention issues, are not relevant to Plaintiff's case. The court therefore **ORDERS** Wal-Mart to produce this information promptly in accordance with this Order and the court's instructions during the April 29 Hearing.

### F. Request No. 8

**Plaintiff requests an "inventory tracking report" demonstrating whether the door lock at issue in this case was reported as a theft in Wal-Mart's official internal tracking system.**

Wal-Mart counters, however, that these reports are not preserved in the ordinary course of business, and cannot therefore be produced. The court accepted Wal-Mart's representation on this ground and urged Plaintiff to file a different motion with respect to the preservation issue, if necessary.

### G. Requests No. 15, 16, and 17

**Plaintiff seeks various budgets and ledgers related to store security at the subject store.**

Plaintiff argues these ledgers may show that Wal-Mart's reliance on public law enforcement officers stretches beyond the narrow domestic dispute cited by Wal-Mart and covers general store security. In particular, Plaintiff seeks ledgers related to the "521" account from which law enforcement officers are paid in cash, as well as ledgers demonstrating the limited expenditures on internal asset protection staff. Plaintiff argues that this is relevant because it may demonstrate that Wal-Mart's asset protection policies are not actually applied in practice. If the vast majority of the store's security staff (as shown through its expenditures) consists of public law enforcement officers who are not bound by the store's policies, these policies will have little applicability on the ground. Wal-Mart retorted that it only has a broad budget which does not keep line items separated in this manner. The court is not persuaded by this assertion. A large entity

8

like Wal-Mart surely keeps track of its security expenditures, which constitute a critical part of its operations. Regardless of whether a specific published or unpublished budget breaks down the detailed allocations between third-party or internal security providers, it is entirely possible for Wal-Mart to simply sum up its cash payments to Chester police officers through its internal ledgers and provide this data to Plaintiff. Similarly, Wal-Mart can isolate any spending on internal security or external private contractors through its accounts. As the court stated during the April 29 Hearing, the entire store budget is not relevant to Plaintiff's case. But this information is not at issue here. Plaintiff only seeks narrow line items which relate to the employment of public law enforcement officials to determine the extent to which Wal-Mart relies on their services, allowing the store to potentially bypass the security policies on which it has so heavily relied in this case. The court therefore **ORDERS** Wal-Mart to obtain these requested line items from its broader budget, or alternatively, sum the requested expenditures from its financial and accounting records and promptly produce them in accordance with this Order.

### H. Request Nos. 18 and 19

**RFP No. 18 seeks emails alleging the decedent committed any crime at Walmart on the day he was killed, while RFP No. 19 seeks any communications between the subject store and Chester Police Department regarding the retention of off-duty police officers. (ECF No. 123 at 6-7.)**

Addressing this request, the court ordered Wal-Mart to produce all emails related to or addressing the events at the heart of this case, including any allegations of theft or mistaken failure to pay by the decedent, the store's investigation of the incident, the decedent's killing, and any other related emails, regardless of when they were sent. Such emails relate to the principal issues in this case, and the court **ORDERS** Wal-Mart to produce all responsive emails to the extent it has not done so already.

9

RFP No. 19 is covered by the court's order to produce all emails related to the decedent as discussed here and in the court's analysis of RFP No. 14 above. Wal-Mart indicates that all responsive emails have been produced, but Plaintiff requests to see the search terms used to narrow down these emails to ensure no responsive communications remain unidentified. During the April 29 Hearing, the court ordered Wal-Mart to produce the search terms it used to narrow down the ESI.

### I. Request No. 22

**This request seeks contracts, letters of intent, and other documentation "between Wal-Mart and any other law enforcement agency, private security company, or any other security contractor" for the three years preceding the decedent's killing. (ECF No. 123 at 7.)**

Wal-Mart indicates that they expanded their original search to the three-year period at issue and intends to produce any additional responsive documents as they are found.

### J. Request No. 27

**This request seeks photographs and product descriptions for the lock allegedly stolen by the decedent.**

The parties indicated that this request has been resolved.

## 2. Interrogatories

### A. Interrogatory No. 1

**This interrogatory requests information related to the brand and model of the lock at issue in this case. (ECF No. 123 at 1.)**

The parties indicated that this request has been resolved.

### III. CONCLUSION

After careful consideration, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel (ECF No. 123). Wal-Mart is **ORDERED** to produce the requested discovery in accordance with this Order within fourteen (14) days. Discovery has concluded, with

the exception of any documents produced pursuant to this Order and the court's oral rulings during the April 29 Hearing. To give the parties an opportunity to review forthcoming discovery and adequately respond to the pending motions for summary judgment, Defendants' time to amend their pending motions has been extended until May 26, 2022, and Plaintiff's time to respond has been extended until June 9, 2022. (ECF No. 156.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

May 12, 2022
Columbia, South Carolina