**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

**ROCK HILL DIVISION**

| | | |
|---|---|---|
| VICKIE J. MCCREE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ARIANE MCCREE.<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHESTER; NICHOLAS A. HARRIS, in his individual capacity; JUSTIN M. BAKER, in his individual capacity; WALMART INC.; and WAL-MART STORES EAST, L.P.,<br><br>Defendants. | ) | Civil Action No.: 0:20-cv-00867-JFA-PJG<br><br>**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION** |

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Plaintiff Vickie J. McCree, as Personal Representative of the Estate of Ariane McCree, by and through her counsel, respectfully submits this consolidated response to the Objections to the Report and Recommendation of the Hon. Magistrate Judge Paige J. Gossett dated August 22, 2022 (ECF No 211) filed by Defendants Justin Baker, Walmart, Inc. and Wal-Mart Stores East L.P., City of Chester, and Nicholas Harris. (*See* ECF Nos. 218, 219, 220, and 221.) In support of this response, Plaintiff incorporates by reference the substantive arguments raised in her original memorandum in opposition to Defendants' motions for summary judgment. (*See* ECF No. 170.)

## <u>STANDARD OF REVIEW</u>

A district court reviews specific objections to a Report and Recommendation under a de novo standard. 28 U.S.C. § 636(b). If a party makes only general objections, de novo review is not required. *Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 746 (W.D.N.C.

2011), 502 F. App'x 326 (4th Cir. 2013). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only "those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007). Similarly, merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant de novo review. *Id.*; *Veney v. Astrue*, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008*)*. "Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless.'" *Id.*

## **ARGUMENT**

Plaintiff's amended complaint brings claims under South Carolina law for negligence, gross negligence, false arrest, wrongful death, and a survival action against all Defendants. (*See* ECF No. 41.) Additionally, Plaintiff's amended complaint brings claims under South Carolina law for negligent hiring, negligent supervision, and/or negligent retention against the City of Chester. (*Id.*) Defendants objected to the portion of the Report and Recommendation recommending remand of these state law claims.

For the reasons set forth in Plaintiff's Objections to the Report and Recommendation (ECF No. 222), this Court should deny summary judgment of Plaintiff's claims and set the case for trial. If, however, the Court grants summary judgment of Plaintiff's federal civil rights claims, it should also remand Plaintiff's state law claims to the Chester County Court of Common Pleas, where Plaintiff initiated this case, for further proceedings.

**A. Plaintiff's State Law Claims Should Be Remanded If Summary Judgment Is Granted on Plaintiff's Federal Claims**

Plaintiff's claims were originally filed in the Chester County Court of Common Pleas on February 3, 2020. Defendants subsequently removed the case to this Court under federal question jurisdiction. Accordingly, if the Court dismisses Plaintiff's federal claims, it will lack original subject matter jurisdiction over the remaining state law claims, thus strongly warranting remand to state court. "[W]hen an action has been removed from state court and the district court subsequently loses its basis for original jurisdiction, in most instances the action must be remanded to the state court." *Darcangelo v. Verizon Comm'cns Inc.*, 292 F.3d 181, 196 (4th Cir.2002); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The Supreme Court has similarly held that when a federal court resolves a question of federal law which was the basis of federal jurisdiction, it may remand the remaining state law claims to state court where doing so would serve the interests of "economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). Ultimately, the question of whether to remand the remaining state law claims is a matter of the district court's informed discretion. *See* 28 U.S.C. § 1367(c)(3). Importantly, "[t]here are no situations wherein a federal court must retain jurisdiction over a state law claim, which would not by itself support jurisdiction." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In cases where all federal-law claims have been eliminated, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350. As set forth below, judicial economy, convenience and fairness to the parties, and comity each favor remand of Plaintiff's state law claims if the Court dismisses her federal claims.

First, the principle of judicial economy favors remand of Plaintiff's state law claims. Although this case has been pending in federal court since 2020, the case was only recently reassigned to the Honorable Joseph F. Anderson, Jr. on August 5, 2022, (*see* ECF No. 204), after being assigned to two prior U.S. District Court Judges, (*see* ECF No. 31). Further, there are no prior orders bearing on any of the underlying issues or facts forming the basis of Plaintiff's state law claims. Therefore, this is not the typical case where a court has expended significant time and energy over the course of years such that it "might be more efficient to simply retain jurisdiction" rather than remand claims back to state court. *Shanaghan*, 58 F.3d at 112.

Further, remand would pose little to no practical burden on the parties. The motions for summary judgment addressing Plaintiff's state law claims, and Defendants' defenses to those claims, are fully briefed and would require little effort to refile in state court once Plaintiff's case is remanded. Additionally, because this case has not been set for trial, because no pretrial scheduling order has been issued, and because the parties have not yet engaged in mediation (which, per the most recent scheduling order, is to occur within 60 days following the issuance of an order ruling on dispositive motions or 30 days prior to trial, whichever date occurs first), remanding the state law claims at this stage of the litigation is appropriate. (*See* ECF No. 132.)

Second, convenience and fairness to the parties favors remand to the Chester County Court of Common Pleas. Plaintiff's Estate is being probated in Chester County and its Personal Representative, Vickie J. McCree, resides in Chester County. The City of Chester, of course, is a municipality located in Chester County, South Carolina. Defendant Nicholas Harris likewise resides in Chester County. And while Defendant Baker apparently relocated out-of-state, he does not contend in his Objections to the Report and Recommendation that litigating in Chester County would pose any undue inconvenience—nor could he reasonably do so as continuing this action in

federal court is no more convenient or fair to him (or the other parties) than remanding it to state court. The same holds true for the Walmart defendants. While the two Walmart entities are foreign corporations, they regularly conduct business in Chester County through their Walmart Superstore located in Chester that is the subject of this litigation and the location where all the relevant events took place. Further, the Walmart witnesses in this case are employees based in Chester who work at the Chester Walmart store.

Third, the principle of comity strongly favors remand. Comity is "a proper respect for state functions ... and ... the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). Regarding comity, the Fourth Circuit has stated there is a "strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction ...." *Arrington v. City of Raleigh*, 369 Fed. App'x 420, 2010 WL 750085 at *3 (4th Cir. Mar. 5, 2010). Here, if Plaintiff's federal law claims no longer remain pending, there remains strong preference that South Carolina state courts hear the remaining state law claims. Further, all relevant events in this case occurred in Chester, South Carolina and the Chester County Court of Common Pleas "has more expertise and familiarity" with the law regarding Plaintiff's remaining claims, all of which are grounded in South Carolina law. *Brickyard Holdings, Inc. v. Beaufort Cnty.*, 586 F. Supp. 2d 409, 416 (D.S.C. 2007). Thus, judicial policy and comity weigh in favor of remand.

**B. Plaintiff's State Law Claim for False Arrest / False Imprisonment Is Not Foreclosed by Summary Judgment on Plaintiff's Fourth Amendment Unlawful Seizure Claim**

In their objections to the Report and Recommendation, Defendants City of Chester and Harris argue that the Court should retain jurisdiction of Plaintiff's state law false arrest / false

imprisonment claim on the purported basis that resolution of the Fourth Amendment unlawful seizure claim necessarily resolves the state law claim for false arrest. Yet, the constitutional claim for unlawful seizure focuses solely on the existence of probable cause, whereas the state law claim for false arrest extends beyond probable cause; namely, to address whether the arrest was not only based on probable cause but also whether it was lawful in other respects. Thus, whether the detention of Ariane McCree was constitutional under the Fourth Amendment does not fully resolve the question of whether it was permissible under South Carolina law.

As an initial matter, the Magistrate Judge recognized that "McCree may have innocently believed that he could later return to pay for the door lock set . . . And there is evidence in the record that could support such determination." (ECF No. 211 at 14.) Aside from finding evidence that McCree lacked the requisite intent to commit any crime, which should have mandated *denial* of summary judgment of Plaintiff's Fourth Amendment unlawful seizure claim for lack of probable cause, this evidence equally serves to establish that summary judgment on Plaintiff's state law claim for false arrest is inappropriate as the issue of probable cause remains in dispute.

Further, Plaintiff has presented ample argument that Mr. McCree's arrest was unlawful beyond the lack of probable cause; namely that it was statutorily unlawful. Under South Carolina law, a misdemeanor arrest must be made "at the time of such violation of law or immediately thereafter." S.C. Code Ann. § 23-13-60; *see also State v. McAteer*, 240 S.C. 644, 532 S.E.2d 865 (2000) (reviewing common law authority to arrest and holding that "there is no common law right to make a warrantless citizen's arrest of any kind and that such rights as exist are created by statute in South Carolina."). Here, there is undisputed evidence that the arrest of Mr. McCree was made hours after the alleged shoplifting, and it is also undisputed that this alleged crime was not committed in any law enforcement officer's physical presence. (ECF No. 170 at 81-83.) While

Defendant Harris takes the opportunity in his Objection to reiterate prior arguments on why the South Carolina statute mandating the officer's presence requirement does not apply to his client, his argument succeeds in only one regard: it exemplifies why this claim should be remanded to South Carolina state courts. Stripped to its essence, Harris's argument that South Carolina law limiting misdemeanor arrests to only those crimes committed in an officer's presence *should not apply* to the arrest of Mr. McCree is both novel and unique. However this novel question is resolved at the trial court level, it may undoubtedly be subject to appellate review in South Carolina state courts. Yet, if this claim is disposed of on summary judgment in federal court, such appellate review may be foreclosed.

The lawfulness of Mr. McCree's arrest is further undermined by the undisputed fact that the individual who placed Mr. McCree in handcuffs—an evidence technician working as a private Walmart security guard—was not a licensed Class I law enforcement officer in South Carolina and, thus, lacked the power of arrest under S.C. Code Ann. § 23-23-40. (*See* ECF No. 170 at 18-19.) Thus, it was unlawful for him to conduct an arrest Mr. McCree.

Finally, the question of agency—whether Harris was acting on behalf of the City of Chester Police Department or Walmart at the time of Mr. McCree's arrest—is another issue that mandates he remain as a named defendant on Plaintiff's state law claims. *See, e.g.*, *Gathers v. Harris Teeter* 282 S.C. 220, 226-27, 317 S.E.2d 748, 752-53 (S.C. Ct. App. 1984) (holding that a jury could have reasonably concluded that the off-duty police officers working security for the grocery store was acting as an agent for the store at the time he made a shoplifting arrest). For similar reasons, the Walmart defendants remain liable for Mr. McCree's false imprisonment under state law. *See Huffman v. Sunshine Recycling, LLC*, 426 S.C. 262, 272, 826 S.E.2d 609, 615 (2019) ("The notion that a private individual may face potential liability for false imprisonment is recognized in South

Carolina.") As explained in Plaintiff's memorandum in opposition to summary judgment, (ECF No. 170 at 69-71, 76-81), there is ample evidence that Walmart engaged in willful and wanton misconduct and in conscious and reckless disregard of Mr. McCree's rights in ordering its paid security guards (all agents of Walmart) to arrest him knowing the true facts of what occurred and the history of its cashier, and knowing that its purpose of detaining Mr. McCree was not to remedy any alleged shoplifting but to detain him so his personal information and photograph could be added to a private Walmart database.

**C. Plaintiff's Negligence Claims Are Not Foreclosed by Summary Judgment on Plaintiff's Fourth Amendment Excessive Force Claim**

Whether the use of force against Mr. McCree by Baker and Harris was constitutional under the Fourth Amendment similarly does not resolve whether that conduct was negligent or grossly negligent under South Carolina law. First, as to Defendant Harris, his reckless conduct leading to McCree's death is indisputably a proximate cause of McCree's death and, thus, is sufficient to support wrongful death liability against him. Harris's argument that an officer's use of force is not redressable in a claim for negligence or gross negligence is a novel issue. Harris raised the same argument in his motion for summary judgment, citing in support two out-of-state court cases—both factually distinguishable—a California state case and an unpublished California federal case. (*See* ECF No. 144-1 at 31; ECF No. 170 at 88.) The absence of South Carolina law directly on point demonstrates that Harris's novel defense to negligence is properly one for a state court to resolve.

As outlined in Plaintiff's memorandum in opposition to summary judgment, there is ample evidence demonstrating that Defendants Harris and Baker acted with gross negligence or recklessly in firing *twenty-nine* rounds at handcuffed McCree, and from Harris's recklessness in ambiguously announcing "shots fired" and "he's already hit me twice" over the police radio so as

to improperly suggest that McCree was firing a gun when the only person firing was Harris. (*See* ECF No. 170 at 74.) This evidence of negligence supports a wrongful death claim. Harris's attempt to evade liability on the wrongful death claim by distinguishing which of the bullets fired from his gun versus Baker's gun is also a novel legal and factual issue best suited for a state court. Indeed, the South Carolina Supreme Court recently endorsed a federal jury verdict finding several counts of *negligence* arising from a South Carolina police officer's shooting of a civilian, including claims for wrongful death and survival sounding in negligence, and the defendant municipality's negligent hiring, retaining, and supervising of the police officer responsible for the shooting. *See Reeves v. S.C. Mun. Ins. & Risk Fin. Fund*, 434 S.C. 18, 24, 862 S.E.2d 248, 251 (2021), reh'g denied (Sept. 21, 2021). Defendant Harris's extensive argument that negligence claims cannot arise from excessive force simply does not withstanding the South Carolina Supreme Court's decision in *Reeves*.

The City of Chester can also be found liable for negligence, as was the Town of Cottageville in the *Reeves* case, for its negligent acts of hiring, supervising, and training of Defendant Harris—an officer with a troubled employment history and who had previously been fired by the City for cause—and of Lavar Richardson, an unlicensed and untrained officer whom it apparently authorized to conduct unlawful arrests of Chester citizens in violation of South Carolina law. Similarly, the Walmart defendants can be found liable for their own negligent acts of hiring, supervising and training Defendant Harris and Lavar Richardson by virtue of hiring these unscreened armed guards and paying them to interact with customers without training them on the very policies that would have prohibited the detention and subsequent shooting of Mr. McCree. (ECF No. 170 at 84-85.)

Finally, Defendant Baker's argument in his Objection to the Report and Recommendation that he is immune from negligence liability under state law on the basis that he was acting within the scope of his employment is misleading and incorrect. As an initial matter, that issue was fully briefed in the parties' summary judgment memoranda and, thus, Baker's attempt to re-raise the argument in his objection is improper. *See Veney*, 539 F.Supp.2d at 846. Further, the argument Baker raises ignores the existence of Plaintiff's gross negligence cause of action against him altogether—one for which he enjoys no immunity under South Carolina law and for which he remains personally liable. (*See* ECF No. 170, Plaintiff's Memo. in Opp'n to Summary Judgment at § IV.A.) Thus, contrary to Baker's argument, the South Carolina Tort Claims Act does not insulate him from state law claims.

## CONCLUSION

As set forth in Plaintiff's Objections to the Report and Recommendation, Plaintiff urges the Court to deny summary judgment on all claims. If, however, the Court adopts the portion of the Report and Recommendation recommending summary judgment of Plaintiffs' federal claims, the Court should remand the remaining state law claims to state court.

Respectfully submitted,

**McLEOD LAW GROUP, LLC**

/s/ Colin V. Ram
W. Mullins McLeod, Jr., Bar No. 14148
Colin V. Ram, Bar No. 103260
H. Cooper Wilson, III, Bar No. 10107
P.O. Box 21624
Charleston, SC 29413
843-277-6655

*Attorneys for Plaintiff*

September 20, 2022
Charleston, South Carolina