IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| Vickie J. McCree, as Personal Representative of the Estate of Ariane L. McCree,<br><br>    Plaintiff,<br><br>v.<br><br>City of Chester; Nicholas A. Harris, in his individual capacity; Justin M. Baker, in his individual capacity; Walmart Inc.; and Walmart Stores East, L.P.,<br><br>    Defendants. | Civil Action No. 0:20-0867-JFA-PJG<br><br>**DEFENDANT HARRIS'<br>REPLY TO PLAINTIFF'S OBJECTIONS<br>TO REPORT AND RECOMMENDATION** |

On August 22, 2022, Magistrate Judge Paige J. Gossett issued a Report and Recommendation recommending that summary judgment be granted to the Defendants on the Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983. (Dkt. #211). The Plaintiff has filed objections to that portion of the Report and Recommendation. (Dkt. #222). The Plaintiff's objections are without merit. The Defendant Nicholas Harris respectfully requests that the Court reject those objections and adopt the well-reasoned and analyzed Report and Recommendation by the Magistrate Judge.

    **I.**    **Plaintiff Misapplies Rule 56 Standard**

In her "Preliminary Statement," the Plaintiff commits the same fundamental errors as riddled her response to the Defendants' motions for summary judgment. Remarkably, the Plaintiff

1

accuses the Magistrate Judge of straying from the *Celotex* standard, when it is the Plaintiff that fails to satisfy the requirements under Rule 56, FRCP, to withstand a properly supported motion for summary judgment. The Plaintiff insists that the "most glaring" error committed by the Magistrate Judge is her "sheer reliance on evidence from only *one source* – the officers' self-serving testimony." *See*, Plaintiff's Objections, p. 2. (Dkt. #222). (Emphasis in original). That presents a disingenuous, if not outright false, reading of the Report and Recommendation which is replete with references to third-party eyewitness testimony, substantial video evidence, and other physical evidence as gathered by SLED in its investigation. The Magistrate Judge makes that very point: "[E]ven if the court assumes that a jury would skeptically evaluate Harris's and Baker's accounts as self-serving, … their accounts are generally corroborated by other witnesses, physical evidence, and video evidence." (Dkt. #211, p. 30). The Magistrate Judge further confirms the Plaintiff's failure to meet her burden under Rule 56: "And crucially, Plaintiff does not come forward with affirmative evidence to contradict the overwhelming evidence showing that McCree was armed and pointing a gun at the officers, as is her burden." (Dkt. #211, p. 30).

In her "Preliminary Statement," the Plaintiff similarly insists that "Harris and Baker each offer only a single piece of evidence: their own testimony." (Dkt. #222, p. 2). Even a cursory review of the summary judgment record shows that to be a false assertion. As the Magistrate Judge makes clear in her analysis, the "overwhelming evidence" as she described was not limited to the testimony of Harris and Baker.

In sum, these bald and untrue statements in the "Preliminary Statement" should serve to discredit the Plaintiff's objections as a whole. They present a false and unfair account of the record and fail to give due credit to the well-analyzed Report and Recommendation, in which the Magistrate Judge very clearly follows and applies the *Celotex* standard. As noted, it is the Plaintiff

that fails to apply Rule 56 by continuing her previous allegiance to two flawed strategies in her attempt to contest the Defendant Harris' well-supported motion for summary judgment. First, the Plaintiff repeatedly argues that the factual scenarios as presented by uncontradicted evidence require a jury's ultimate determination because the Defendants and even uninterested witnesses may be disbelieved by the jury. Second, the Plaintiff presents alternative theories that are unsupported by any concrete, admissible evidence and in many cases are not even plausible; yet, the Plaintiff insists, without proof, that such theories are possible and a jury must decide whether they indeed occurred or not. As the Magistrate Judge correctly recognized, both of these strategies are in direct contravention of the summary judgment standard recognized under Rule 56.[1]

## II.     Plaintiff's Claim of "Omitted Facts"

Next, in a section entitled "Specific Objections," the Plaintiff argues that the Magistrate Judge "omitted" key facts. The Plaintiff provides a laundry list of such facts applicable to both the false arrest claim and the excessive force claim. Despite providing that list, the Plaintiff fails to provide any analysis to show that such "facts" are genuinely disputed or material. Indeed, many of the "facts" were not omitted from the Report and Recommendation, a obvious example being that McCree was in handcuffs. No reasonable argument can be made that the Magistrate

---

[1] In the leading case of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court rejected the argument "that a plaintiff may defeat a defendant's properly supported motion for summary judgment … without offering any concrete evidence from which a reasonable juror could return a verdict in his favor." 477 U.S. at 256. The Supreme Court further rejected the argument that a properly supported motion for summary judgment could be defeated "by merely asserting that the jury might, and legally could, disbelieve the defendant's [version of the facts]." *Id*. "Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." 477 U.S. at 256. Similarly, the Fourth Circuit has held that "[t]he nonmoving party … cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Judge did not acknowledge that McCree was in handcuffs. Another example is that Harris and McCree fire shots at McCree, while McCree's weapon was not fired. Of course, that is acknowledged by the Magistrate Judge.

In *United States v. Midgette*, 478 F.3d 616 (4th Cir. 2007), the Fourth Circuit explained that "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." 478 F.3d at 622. Here, with respect to these purportedly "omitted facts," the Plaintiff has not presented the objections with the required specificity in that, as mentioned, the Plaintiff includes no discussion that the "omitted facts" are genuinely disputed or material, and if so, the issues or claims to which there are material.

### III. Excessive Force Claim

Section II of the Plaintiff's objections pertain to the excessive force claim. Those objections, as directed against the Defendant Harris, are discussed and refuted in Harris' summary judgment reply memorandum. (Dkt. #197). While the Defendant Harris relies on that memorandum in response to the Plaintiff's objections, he will summarize the highlights herein.

### A. Evidence the Gun was Retrieved by McCree from his Vehicle

The Plaintiff argues that a jury must decide whether McCree had a gun when he was shot and struck three times. She points to evidence that McCree was searched in the Loss Prevention Room in Wal-Mart, and he was found not to have possession of a gun at that time. However, the evidence presented demonstrates that when he was shot, McCree had obtained possession of a gun. Both Defendants Harris and Baker testified that they saw McCree pointing and presenting a firearm prior to any shots being fired. As corroboration, Baker's bodycam video shows the gun in McCree's possession. Moreover, two uninterested third-party eyewitnesses, Jeffrey Wallace

and Diane Smith, testified by affidavit and in statements provided to SLED investigators on the date of the incident that they witnessed McCree with a gun. In fact, Wallace testified that he actually witnessed McCree enter his black Chevrolet Impala and come out with a gun in his hand. Wallace attests: "I saw the suspect run past me toward his black car. He got in the car and then got back out of it with a gun in his hand. After that, one officer started shooting at the suspect." (Dkt. # 143-9). In his statement given to SLED, Wallace states: "then the suspect ran passed me to his black car. Got in it and then got back out of it with a gun in his hand. Then one officer started shooting at the suspect until other officers arrived." (Dkt. #175-9).

As additional corroborating evidence, the photographs taken by SLED crime scene investigators as well as the Baker bodycam video at 12:02:00 show that the driver side door of McCree's car was left open. That is also reflected in the SLED crime scene drawing that is in evidence. (Dkt. #174-25). It is not plausible that McCree left his car door open when he exited it to re-enter the Wal-Mart, particularly with the engine running which is how it was found after the shooting. (Dkt. #174-2, p. 34 of 46). Rather, the open car door corroborates Jeffrey Wallace's testimony that McCree entered his car to retrieve a gun. That further shows, as the Magistrate Judge correctly states, that McCree did have possession of a weapon when he was shot.

Importantly, as the Magistrate Judge found, the Plaintiff never offers any concrete, admissible evidence as required at the summary judgment stage to support the position that McCree did not go to his car and retrieve a firearm, that McCree did not hold the firearm in his right hand around the side of his body, and that McCree did not point it in the direction of the officers or others.

5

### B. Plaintiff's Unsubstantiated Theory that Harris Planted the Gun on McCree

The Plaintiff also makes the unsubstantiated claim that Harris planted the gun on McCree. She points to Harris' comment immediately after the shooting that the gun "was in his ass" to suggest there is evidence that the gun was not retrieved from McCree's vehicle despite the eyewitness testimony of Jeffrey Wallace. During the pursuit through the parking lot as they were heading in the direction of McCree's car, Harris had lost sight of McCree and did not know he went to his vehicle and made that "in the ass" comment to obviously indicate that he did not know where the gun came from – not that it literally was "in his ass." The Plaintiff goes so far as to suggest that "there is evidence suggesting the gun was placed on McCree at some point after Harris filed the first shot." (Dkt. #222, p. 14). She never states, however, what that evidence is. In actuality, there is no concrete, admissible evidence to support that theory. The Plaintiff likewise fails to show how that theory is even plausible. For instance, the Plaintiff never offers an explanation where Harris obtained the gun, particularly one that had been previously sold to McCree, and how Harris just so happened to have that gun in his possession when he went to Wal-Mart for duty that morning. Moreover, there is no surveillance video showing that Harris and McCree came together after shots began so that Harris could have "planted" the gun on him at that point. There is likewise no witness testimony to that effect. Additionally, it defies logic why Harris would voluntarily hand McCree a loaded gun and actually place it in his hand such that McCree could have then used it to shoot Harris and others in his vicinity. Moreover, the theory discounts the eyewitness testimony and photographic evidence that shows McCree went to his car to retrieve the gun. As indicated, the only plausible account of where the gun came from is provided by Jeffrey Wallace, who saw the Plaintiff go to his vehicle, enter it, and come out with a gun in his hand. That same gun was in his hand when he was shot by the Defendant

Baker. The Baker bodycam footage shows conclusively that the gun was in McCree's hand and there was no opportunity for the gun to have been planted on McCree.

        **C.**        **Plaintiff Never Submitted DNA Evidence by Expert Testimony**

The Plaintiff also argues that SLED was unable to rule out the Defendant Harris' DNA from being on McCree's gun, and that the Magistrate Judge disregarded this evidence. However, as the Magistrate Judge ruled, "Plaintiff fails to establish a proper foundation for the admissibility of the DNA evidence." (Dkt. #211, p. 26). It is undisputed that the Plaintiff does not cite to the testimony of any expert witness with the knowledge, experience, and the credentials of an expert witness in DNA forensic testing and analysis. Critically, the Plaintiff never identified a DNA expert for use in this litigation. (Dkt. #102). For purposes of her summary judgment arguments, the Plaintiff simply filed a copy of the SLED Forensic Services Laboratory Report dated December 12, 2019, and a Supplemental Report dated January 31, 2020. (Dkt. #176-12). Those reports were authored by Catherine Leisy, a forensic scientist with SLED. The Plaintiff never identified Catherine Leisy as an expert witness, did not depose Ms. Leisy, and did not present any explanation by Ms. Leisy, nor any other recognized expert witness, to explain the DNA testing performed or the results and DNA analysis contained in her reports. It is well settled that "DNA evidence is scientific and highly technical in nature." *United States v. Davis*, 244 F.3d 666, 671 (8th Cir. 2001). That evidence cannot simply be presented to the Court nor any factfinder without an appropriate foundation laid and without testimony provided by an expert witness in DNA testing and analysis.

Instead of presenting expert testimony in this "scientific and highly technical" field, which universally requires expert testimony, the Plaintiff presented instead the testimony of a lay person, Brian Tolbert, who is a Senior Special Agent with SLED. In his deposition, the

Plaintiff's counsel asked Special Agent Tolbert numerous questions about the SLED reports and the specific findings and analyses, on none of which Special Agent Tolbert was qualified to offer opinions or technical explanations. For purposes of the Defendant Harris, the Plaintiff's counsel focused on Proposition Set V in the Supplemental Report which states in part: "The DNA profile is approximately 33 (113.0E-2) times more likely if three unidentified unrelated individuals contributed to the mixture than if Nicholas Harris and two unidentified unrelated individuals contributed to the mixture." (Dkt. #176-13, p. 5 of 6). Special Agent Tolbert was unable to interpret or explain that finding and its significance. He testified that he is not a DNA analyst. Likewise, the Plaintiff's counsel never attempted to qualify him as an expert witness on DNA testing, analysis, and interpretation. Special Agent Tolbert, in fact, admitted that the DNA analyst who performed the analysis and drafted the reports would be the best person to question about the reports and their findings. *See*, Tolbert Dep., p. 120:8-15. Special Agent Tolbert denied having specialized knowledge (or any knowledge) regarding the results of the DNA analysis as reported by Ms. Leisy and what the probabilities mean, and accordingly, he was unable to explain those results. *See*, Tolbert Dep., pp. 120:16-122:13; 124:16-125:22. He again testified that the explanation should be offered by Ms. Leisy. *See*, Tolbert Dep., pp. 125:23-126:1.

It is fundamental that a lay person cannot offer opinions and an explanation of a DNA analysis, including the probabilities associated with the results and their significance from a legal standpoint. Likewise, in the absence of expert testimony, the Plaintiff is precluded from offering lay opinions or her counsel's own conclusions about what the DNA analysis demonstrates. Certainly, the Plaintiff has not presented any competent evidence under Rule 702, FRE, for this Court to competently rule that McCree's gun did have or may have had DNA from the

Defendant Harris. That is not what the SLED DNA analysis shows, and certainly, no competent, admissible evidence demonstrates that for purposes of the Plaintiff's opposition to summary judgment.

    **D.    Plaintiff's Unsubstantiated Theory that Harris shot McCree before McCree Retrieved his Gun from his Vehicle**

The Plaintiff also makes the unsubstantiated claim that Harris shot McCree as he was fleeing and before McCree retrieved his gun from his car. This theory was correctly rejected by the Magistrate Judge, who pointed to the testimony of Kimberly Collins, M.D., the Plaintiff's own pathology expert, who testified that neither the right arm nor the left hip wounds were from the rear. The hip wound was to the "direct side," and the right arm wound was from the front. *See,* Collins Dep., pp. 56:18-57:23.

For this argument, the Plaintiff also cites to the SLED diagram of shell casings to argue that the shell casings reflect that Harris shot McCree before he got to his car. However, the Plaintiff's reliance on the SLED shell casings diagram is misplaced. That diagram (dated January 14, 2020) shows the shell casings from the Defendant Harris (numbered on the diagram as 16-26) were in the vicinity of the concrete sidewalk and island that bordered the aisle on which McCree was parked and were in close vicinity to his car. (Dkt. #174-25). This is also consistent with Harris' diagram provided to SLED (dated November 27, 2019) which shows where Harris was located when he lost sight of McCree (identified as #4), where McCree was when he regained sight of him (#5), and where he "observed subject pointing gun" (#7). (Dkt. #175-5, pp. 9-10). That diagram, when viewed in conjunction with the SLED shell casings diagram, shows that the Harris shell casings were all in the area of #7 on the Harris diagram, that being where he "observed subject pointing gun." Note also that the SLED diagram is dated January 14, 2020, which was more than six weeks after Harris provided his diagram to SLED.

The Harris diagram also shows that Harris lost sight of McCree for a distance of about four parking aisles, which provided McCree time to go to his car, and as Jeffrey Wallace observed, retrieve his firearm, and that also explained why Harris did not see where the gun came from. Thus, by the time Harris began shooting, as reflected on the SLED shell casings diagram, Harris was located in the vicinity of parking lot aisle where McCree's car was parked and the shooting occurred after McCree had retrieved his gun from the car. Nonetheless, this is yet another theory where the Plaintiff has failed to present any concrete, admissible evidence that supports her theory. As the Magistrate Judge writes, "McCree fails to point to any evidence in the record that actually supports [her] theory that McCree was shot as he was running away or before he grabbed his gun." (Dkt. #211, pp. 27-28).

## IV. Unlawful Seizure/False Arrest

The Plaintiff's objections on the false arrest claim are meritless. For starters, the Plaintiff erroneously argues that probable cause was negated when McCree returned to the Wal-Mart in an alleged attempt to pay for the merchandise he had earlier stolen. Even if true, any attempt after the fact to make payment does not negate probable cause. Not surprisingly, the Plaintiff has not cited any case law or other authorities to suggest that probable cause is negated under such circumstances.

Additionally, the Plaintiff fails to grasp the distinction between sufficient evidence to establish probable cause vis-à-vis sufficient evidence to convict. In other words, the Plaintiff improperly attempts to argue guilt or innocence to withstand summary judgment. Importantly, in *Baker v. McCollan*, 443 U.S. 137 (1979), the United States Supreme Court held that "[t]he Constitution does not guarantee that only the guilty will be arrested." 443 U.S. at 145. The Supreme Court explained that law enforcement is not required "to investigate every claim of

innocence" and is not required to perform "an error-free investigation" to avoid liability under § 1983. 443 U.S. at 146. The Fourth Circuit has similarly held that "a police officer's failure to pursue potentially exculpatory evidence was not in itself sufficient to negate probable cause." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). The Fourth Circuit likewise ruled that "probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful." *Id.*, *citing Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989). *See also*, *Brice v. Nkaru*, 220 F.3d 233, 239, n.5 (4th Cir. 2000) ("the police are not required to conduct a trial before making an arrest").

To avoid summary judgment on a Fourth Amendment unlawful seizure/false arrest claim, the plaintiff "must allege a set of facts which make it unjustifiable for a reasonable officer to conclude [he] violated [the law]." *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002). As the Magistrate Judge correctly determined, the information available to the Chester police officers, Harris included, at the time of the arrest demonstrated clearly that probable cause existed for McCree's arrest on the charge of shoplifting, or at the very least, on the alternative charge of petit larceny.[2] The officers knew that McCree had proceeded to the cash register with a door lock priced at $45.87, and after the Wal-Mart cashier (Joshua Stevenson) rung up the sale, McCree took the bag with the merchandise and left the store without paying for it. *See*, Stevenson Depo., pp. 29-30. That information was relayed to the officers by Stevenson or other Wal-Mart employees. In addition, Officer Lavar Richardson had reviewed the security video of the transaction, and Officer Makeesharia Williams-Tobias had identified McCree from a still

---

[2] Under South Carolina law, larceny involves the "taking and carrying away of the goods of another, which must be accomplished against the will or without the consent of the other." *State v. Brown*, 274 S.C. 48, 260 S.E.2d 719, 720 (1979). Petit larceny, which involves the taking of goods with a value of less than $2000, is a misdemeanor. *See*, S.C. Code Ann. § 16-13-30.

photograph taken from the video because she was familiar with him. *See*, Richardson Depo., pp. 51-52; Williams-Tobias Depo., p. 53. Thereafter, when McCree returned to the Wal-Mart approximately two hours later, he admitted to having taken the merchandise without paying for it. *See*, Harris Depo., pp. 194-195. That information provided the officers with sufficient probable cause to reasonably believe that a crime had been committed. Thus, the Defendant Harris is entitled to summary judgment on the false arrest claim.

Based on the foregoing, the Court is respectfully requested to reject the Plaintiff's objections and to enter summary judgment for the Defendant Harris.

    Respectfully submitted,

    LINDEMANN & DAVIS, P.A.

    BY:   *s/ Andrew F. Lindemann*
        ANDREW F. LINDEMANN     #5070
        5 Calendar Court, Suite 202
        Post Office Box 6923
        Columbia, South Carolina 29260
        (803) 881-8920
        Email: andrew@ldlawsc.com

    RICHARD J. DOLCE     #575
    Post Office Box 4403
    Irmo, South Carolina 29063
    (803) 772-7411
    Email: rjdolce@sc.rr.com

    *Counsel for Defendant Nicholas A. Harris*

September 20, 2022