IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vickie J. McCree, *As Personal Representative of the Estate of Ariane L. McCree*, | C/A No. 0:20-867-JFA-PJG |
| Plaintiff, | |
| vs. | |
| City of Chester; Walmart Inc.; Wal-Mart Stores East, L.P.; Justin M. Baker, *in his individual capacity*; Nicholas Harris, *in his individual capacity*, | **ORDER** |
| Defendants. | |
| Nicholas Harris, *in his individual capacity*, | |
| Counter Claimant, | |
| v. | |
| Vickie J. McCree, As Personal Representative of the Estate of Ariane L. McCree, | |
| Counter Defendant. | |

I.    **INTRODUCTION**

Plaintiff Vickie J. McCree, as personal representative of the estate of Ariane L. McCree ("McCree"), ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 asserting claims for excessive force and unlawful seizure in violation of the Fourth Amendment as well as bystander liability against Defendants Nicholas Harris ("Harris") and Justin M. Baker ("Baker"). Plaintiff also asserts a § 1983 claim against Defendants Walmart Inc. and

Wal-Mart Stores East, L.P. ("Walmart")  for violations of the Fourth Amendment. Finally, Plaintiff asserts state law claims of false arrest or false imprisonment, negligence, gross negligence, and wrongful death and survival against all Defendants. As to Defendant City of Chester ("City of Chester"), Plaintiff asserts state law claims of negligent hiring, supervision, and retention. Additionally, Defendant Nicholas Harris has asserted a counter claim for assault and battery against Plaintiff. (ECF No. 66). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings.

Defendants Baker (ECF No. 139), Walmart (ECF No. 140), City of Chester (ECF No. 143), and Harris (ECF No. 144) filed motions for summary judgment. Plaintiff filed a consolidated response in opposition to the motions (ECF No. 170), and Defendants each filed replies (ECF No. 194-197).

After reviewing Defendants' motions for summary judgment and all responsive briefing, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that summary judgment should be granted as to Plaintiff's federal civil rights claims, and this Court should decline to exercise supplemental jurisdiction over the remainder of Plaintiff's state law claims and Harris' counterclaim.  (ECF No. 211). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation.

The parties filed objections to the Report on September 6, 2022 (ECF Nos. 218-222), and on September 20, 2022, the parties filed replies. (ECF Nos. 224-228). On January

10, 2023, this Court heard two and a half hours of oral argument from the parties on the instant motions. (ECF No. 232). Thus, this matter is ripe for review.

## II.    STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976).  A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error

3

in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III.    DISCUSSION

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report and therefore, a full recitation is unnecessary here. (ECF No. 211). However, due to the nature of the events, this Court will briefly describe the facts of the subject incident.[1]

On November 23, 2019, McCree arrived at Walmart in Chester, South Carolina around 8:45 a.m. to purchase a combination doorknob and door lock set. McCree approached a cash register and waited in line. The cashier scanned the set, placed it in a

---

[1] In accordance with the Report, this Court will note the source of the facts where it is especially relevant.

4

plastic bag, and handed it to McCree. McCree took the bag and walked away without paying. According to the cashier, McCree told him to "put it on my tab." (ECF No. 140-15 at 6).

The cashier reported the incident to the manager who then told Lavar Richardson, an off-duty City of Chester police officer working as a security guard for Walmart. Later that morning, Richardson also reported the incident to the Walmart loss prevention manager, Evelyn McManus. Another off-duty City of Chester police officer working as security for Walmart, Makeesharia Williams-Tobias, arrived at the store. She reviewed the surveillance footage and because she knew McCree personally, she was able to identify him as the suspect. Loss Prevention Manager, McManus, requested that Richardson or Williams-Tobias seek a warrant for McCree's arrest. Around 11:00 a.m., Defendant Harris, another off-duty City of Chester police officer working as security, arrived at the store. Harris was briefed on the situation and asked to help with the prosecution of McCree.

At or around 11:15 a.m., McCree returned to the store. Upon entering the store, McCree encountered Williams-Tobias near the self-checkout registers. Williams-Tobias walked to the asset protection office to retrieve a printout of a still shot from the surveillance video of McCree's earlier visit to the store. At the same time, McCree walked back outside to the parking lot and then immediately re-entered the store. McCree walked outside a second time but returned to the vestibule of the store—the entrance of the store where the shopping carts are stored. Williams-Tobias called Richardson to advise that McCree had returned to the store and Williams-Tobias walked to the vestibule of the store to meet with McCree. Richardson and Harris also arrived in the vestibule at some point.

McCree offered to pay for the set with cash, but McManus had advised Williams-Tobias that Walmart would not accept payment. Richardson and Harris handcuffed McCree and took him to the asset protection office. Richardson and Harris also both testified that McCree smelled like marijuana.

After placing McCree in the loss prevention office, Harris and Richardson requested an on-duty City of Chester police officer pick up McCree to transport him to jail. Harris searched McCree and found a pocketknife which Harris removed and placed on a bench in the office. Significantly, Harris did not find a gun on McCree. McCree remained handcuffed while Richardson left the room and Harris stayed to monitor him until the on-duty police officer arrived. The video surveillance footage from inside the asset protection office shows McCree and Harris standing near each other and they appear to be intermittently talking. (ECF No. 143-8) (Walmart Asset Protection Office Footage). McCree is swaying back and forth, but otherwise appears calm. *Id.* at 00:00:57. Suddenly, McCree charges Harris knocking him into a wall and Harris attempts to stop McCree from getting away by placing his arms around McCree. *Id.* at 00:01:48. McCree and Harris struggle until handcuffed McCree manages to open the door and run out of the office while Harris still trying to hold onto him. *Id.* at 00:01:55.

McCree runs out of the store with his hands cuffed behind his back. Harris and Richardson chase McCree into the parking lot. Harris caught up to McCree near a Taco Bell restaurant at the edge of the Walmart parking lot. Harris testified that McCree headbutted him several times and they struggled before McCree was able to get away again. (ECF No. 144-2 at 6). Over the radio, Harris advised other officers that McCree had

already assaulted him multiple times. Significantly, a bystander, Jeffrey Wallace, was loading groceries into his car when he saw McCree get in a car and then exit the car with a gun in his hand. (ECF No. 143-9 at 2).

According to Harris, he saw McCree walking between cars and toward Harris. Harris heard a woman scream "he's got a gun." (ECF No. 144-2 at 8). Harris then saw the gun which McCree was holding in his handcuffed hands behind his back being raised over the side of a car pointed toward Harris, less than ten feet away. Harris testified he believed McCree was going to shoot him because he had already assaulted him and now, he had a gun. (ECF No. 144-2 at 6). Harris drew his gun and fired at McCree who fell between two cars. Harris attempted to approach McCree, but as he did so, Harris testified McCree rolled over and tried to point his gun at him again. Harris fired more shots, but his gun jammed, and Harris took cover behind a car. At this point, Harris was unsure whether he shot McCree or not. Harris radioed to the other officers that shots had been fired but did not specify who was shooting. Harris testified that McCree never fired back. Harris continued to take cover and radioed that he needed help because he was out of ammunition and McCree still had a gun. Harris testified that McCree continued to come after him as he attempted to flee between cars.

At some point, Defendant Baker, the on-duty City of Chester police officer who was already enroute to take McCree to jail arrived on scene. Baker testified he heard Harris' report over the radio that shots had been fired but Baker did not know who fired the shots or if the suspect was armed. Baker's body camera footage shows him exiting his police car and walking down a parking lot aisle where Baker encounters McCree. Baker testified saw

7

McCree holding a gun at his side and the gun was pointed in his direction and he could see the barrel of the gun. (ECF No. 139-3 at 13). Baker testified he ordered McCree to drop the gun and McCree did not comply with that order. Baker's body camera footage shows McCree approaching Baker and Baker firing several shots toward McCree. (ECF No. 174-33) (Baker Body Camera at 00:00:10). The footage also shows McCree continuing to walk towards Baker until he fell to the ground, still holding his gun. *Id.*

The footage shows Baker approaching McCree with his gun still aimed at him while McCree lay on the ground on his right side, bleeding. Baker put his gun to McCree's head with his right hand while he used his left hand to pull McCree's gun away from McCree. McCree's gun was found to be loaded. Baker turned McCree over and after seeing he was already handcuffed, he turned McCree back over and rendered first aid by applying pressure to the gunshot wound on McCree's chest. Then, Harris arrived near them and knelt on the ground with a rifle pointed towards McCree. Harris remarked, "check him real good, he had that gun in his ass." (Baker Body Camera at 00:02:12).

EMS eventually arrived and took McCree to the hospital where he was pronounced dead. An investigation by South Carolina Law Enforcement Division ("SLED") showed that McCree had been shot three times and died due to a gunshot wound to his chest. The investigation also revealed that McCree's gun which Baker recovered at the scene was a black and silver semi-automatic pistol purchased by McCree on May 13, 2016, in Rock Hill, South Carolina. The investigation also concluded that McCree's gun was not fired

during the incident. SLED's DNA analysis of McCree's gun showed that DNA from McCree, Baker, and a third, unknown individual was found on the gun.[2]

Now, Plaintiff, as a personal representative of McCree's estate, brings the instant suit asserting claims pursuant to § 1983 for excessive force and unlawful seizure in violation of the Fourth Amendment and bystander liability against Defendants Harris and Baker. Plaintiff also asserts a § 1983 claim against Defendant Walmart for violations of the Fourth Amendment. Further, Plaintiff raises state law claims of false arrest or false imprisonment, negligence, gross negligence, and wrongful death and survival against all Defendants. Plaintiff also asserts state law claims of negligent hiring, supervision, and retention against Defendant City of Chester. Defendant Harris has filed a state law counterclaim of assault and battery against McCree's estate.

After two and a half hours of oral argument on January 10, 2023, watching the videos in the record multiple times including an enhanced version of Baker's body camera footage presented at the hearing, this Court is satisfied that the Report is correct in its recommendation to grant Defendants' motions for summary judgment as to Plaintiff's federal civil rights claims. The Report also recommends this Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law tort claims and Harris' counterclaim. Accordingly, this Court will also adopt this portion of the Report and remand these claims to the Chester County Court of Common Pleas.

---

[2] SLED's Investigative Report states  Harris, Richardson, and Williams-Tobias submitted DNA samples and were eliminated as contributors to the DNA profile from McCree's gun, but Plaintiff disputes this statement. (ECF No. 174-2 at 41).

Below, this Court will analyze the Report's recommendations as to each of Plaintiff's claims along with the parties' corresponding objections in turn below.

**A. Plaintiff's Claims Pursuant to 42 U.S.C. § 1983**

Plaintiff claims Harris and Baker falsely arrested McCree and used excessive force against him in violation of the Fourth Amendment.

To establish a claim under § 1983, a plaintiff must show: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

The Report recommends granting summary judgment as to these claims against Defendants Harris and Baker, and this Court agrees.

**i.    False Arrest**

Plaintiff has asserted a claim for unlawful seizure or false arrest pursuant to § 1983 against Defendants Harris and Baker. Defendants argue they are entitled to summary judgment as to this claim because Defendant Harris had probable cause to arrest McCree for shoplifting or petit larceny. On other hand, in her objections to the Report, Plaintiff argues there is a genuine issue of material fact as to whether McCree intended to steal the door lock set from Walmart, and as such, a jury could conclude Defendants lacked probable cause to arrest McCree.

To establish a § 1983 claim for false arrest in violation of the Fourth Amendment, the plaintiff must show the seizure of his person was unreasonable, i.e., he must show that he was arrested without probable cause. *See Rogers v. Pendleton*, 249 F.3d 279, 294 (4th

Cir. 2001) (stating that claims for false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"); *see also Brown v. Gilmore,* 278 F.3d 362, 367 (4th Cir. 2002) (stating that to establish an unreasonable seizure under the Fourth Amendment, the plaintiff must show he was arrested without probable cause). Thus, there is no § 1983 claim for false arrest unless the officer lacked probable cause. *See Street v. Surdyka,* 492 F.2d 368, 372- 73 (4th Cir. 1974).

A law enforcement officer has probable cause to effect a warrantless arrest where the totality of the facts and circumstances known to the officer at the time of the arrest would cause a reasonable officer to believe that a criminal offense has been committed. *Devenpeck v. Alford,* 543 U.S. 146, 152-53 (2004); *Smith v. Munday,* 848 F.3d 248, 253 (4th Cir. 2017). Probable cause inquiries turn on two factors: (1) the suspect's conduct as known to the officer, and (2) the contours of the offense thought to be committed by that conduct. *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992). Probable cause requires more than bare suspicion, but it requires less than evidence necessary to convict. *Munday,* 848 F.3d at 253.

As outlined in the Report, at the time of the arrest, Defendant Harris knew that McCree left Walmart with a door lock set without paying for it. Williams-Tobias identified McCree as the suspected individual on the surveillance footage. And when McCree returned to the store, he was confronted by Williams-Tobias, Harris, and Richardson in the store's vestibule. At this time, McCree admitted that he took the door lock set and, attempted to pay for the set with cash. The Report concludes this information is sufficient to lead a reasonable officer, such as Harris, to believe that McCree intended to take the

door lock set without paying for it which is a misdemeanor under South Carolina law. *See* S.C. Code Ann. § 16-13-110(A)(1) (shoplifting statute); *See also* S.C. Code Ann. § 16-13-30 (petit larceny statute).

Plaintiff lodges five separate objections to the Report's recommendation to grant summary judgment as to Plaintiff's claim of unlawful seizure or false arrest pursuant to § 1983. The basis of each objection is that the Report has failed to view the facts in the light most favorable to the Plaintiff as required by Federal Rule of Civil Procedure 56. Where an inference may be made based on the facts available, Plaintiff argues the Report consistently makes inferences adverse to Plaintiff.

First, Plaintiff argues the Report only considers the evidence known to the officers *prior to the arrest* when determining whether they were reasonable in concluding they had probable cause to arrest McCree. Plaintiff argues the Report should have only considered the evidence available to the officers *at the time of the arrest*. Specifically, Plaintiff takes issue with the Report's conclusion that "before McCree returned, *the officers already reasonably believed* that McCree shoplifted the door lock set and Walmart had already decided to press charges." (ECF No. 211-14) (emphasis added). By only considering the events which occurred prior to his arrest, Plaintiff argues the Report completely disregards the crucial fact that at the time of his arrest, McCree attempted to pay for the door lock set. And while the Report views this fact as an admission of guilt, Plaintiff argues it should be viewed as evidence of McCree's lack of intent to steal the door lock set.

Plaintiff presented a similar argument in her response in opposition to Defendants' motions for summary judgment and the Report considered such argument but ultimately,

disposed of it. (ECF No. 170). The Report recognizes that McCree may have innocently believed that he could pay for the set later and that when he returned, he had almost the exact amount of cash needed to purchase the set. But, as the Report concludes, McCree returning to the store to pay for the set does not create a question of fact as to whether the officers had probable cause to arrest him. While McCree's true intent may be relevant to his ultimate guilt or innocence at trial, this Court agrees with the Report that it should only consider the facts material to Defendant Harris' determination that he had probable cause to arrest McCree. Plaintiff may dispute the way the facts are viewed or interpreted, but the facts available to Defendant Harris at the time of McCree's arrest, including his attempt to pay for the set, are not in dispute and do not change the reasonableness of Defendant Harris' decision.

Next, Plaintiff argues the Report failed to infer McCree left the store without paying due to an error or mistake as opposed to him committing a crime. Plaintiff refers to the surveillance footage which shows McCree proceeding through the checkout line like other customers and handing the cashier the door lock set as if to check out. Plaintiff argues that McCree's conduct on the footage does not support any inference of an intent to shoplift. Based on McCree's conduct, Plaintiff argues this Court should infer the cashier forgot to request payment, that McCree forgot to tender payment, or some other mistake occurred.

While this Court agrees with Plaintiff that it must view the facts in the light most favorable to her, this Court is unwilling to create such inferences when there is no evidence to support them. The evidence is clear that the cashier did not forget to request payment because he called out to McCree when McCree forgot to pay. Additionally, McCree's

response that he should "put it on my tab" also rules out the Plaintiff's second suggested inference that McCree innocently forgot to pay because it demonstrates he was aware he needed to pay for the set but was not going to at that time. Even viewing the facts in the light most favorable to the Plaintiff, the only inference that can be drawn from McCree's actions along with his statement is that he intended to pay later. But, as the Report points out, McCree's intention is irrelevant. Here, the issue is not whether McCree is guilty of the crime of shoplifting, but rather whether Harris had probable cause to arrest him for shoplifting. When determining whether to arrest a suspect, an officer is not required to ask themselves whether the suspect intended to commit a crime. Rather, an officer, such as Harris, looks to the totality of the facts known to him or her at the time to determine whether a reasonable officer would believe a crime had been committed. The surveillance footage shows McCree leaving without paying for the set, and later, he also admits he did so. The Court recognizes Plaintiff's argument that McCree's attempt to pay means he did not really intend to shoplift, but this argument fails because McCree did shoplift. Therefore, Plaintiff's second objection is overruled.

Plaintiff's third objection is that the Report fails to consider the cashier's disciplinary history which supports the inference that McCree's act of leaving the store without paying was an innocent mistake. Plaintiff's argument is unclear as to the innocent mistake she suggests could have occurred other than McCree stealing the set. Although the surveillance footage does not have sound, it does show McCree standing in line and handing the item to the cashier which the cashier rung up and handed back to McCree. It does not show McCree handing the cashier any form of payment which failed or was

otherwise insufficient that could lead this Court to infer McCree potentially believed he had paid for the item. Instead, the footage shows McCree walking away with the item and the cashier throwing up his hands at McCree.

Plaintiff takes issue with the Report's failure to consider the cashier's disciplinary history because Plaintiff argues it creates a genuine issue of material fact as to whether the cashier actually notified McCree of his failure to pay. Plaintiff's argument fails to connect the dots between the cashier's alleged failure to notify McCree and Harris' determination of whether he had probable cause to arrest McCree. Even assuming the cashier did not notify McCree of his failure to pay, the cashier's actions do not create a genuine issue of material fact as to the issue of probable cause because Harris did not consider the cashier's actions when deciding to arrest McCree. Harris only considered McCree's actions which were leaving the store with an item without paying for it. Therefore, Plaintiff's third objection is overruled.

Plaintiff's fourth objection is that the Report failed to consider the cashier's statement that McCree told him to "put it on his tab" and McManus' statement that McCree said he was going to the bank. Plaintiff argues this evidence supports the inference that McCree did not intend to deprive Walmart of the value of the item, and as such, the officers lacked probable cause to arrest him. Plaintiff argues the Report also fails to consider the contextual backdrop of the underlying events such as the rurality of Chester County and McCree's positive reputation at the store.[3] This Court finds Plaintiff's argument once again

---

[3] As to Plaintiff's suggestion that a Walmart store in Chester County may operate differently than stores in more modernized areas such as Columbia or Charleston, this Court finds this argument

misses the point—McCree's intent is irrelevant to Harris' determination of whether probable cause existed to arrest him. As such, this Court agrees with the Report and finds this evidence does not create a genuine issue of material fact as to the issue of probable cause. Therefore, Plaintiff's fourth objections is overruled.

The Report concludes that Plaintiff's claim for false arrest pursuant to § 1983 should be dismissed because Harris and Baker did not violate McCree's constitutional rights when he was arrested on November 23, 2019. This Court agrees with the Report and finds that after viewing the record and drawing all reasonable inferences in the light most favorable to Plaintiff, while simultaneously viewing the facts from the perspective of a reasonable officer on the scene, Harris' decision to arrest McCree was reasonable.[4]

Plaintiff's fifth and final objection is to the Report's conclusion that Harris would be entitled to qualified immunity as to Plaintiff's false arrest claim.

Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[5] *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To resolve a qualified immunity

---

unpersuasive. This argument may prevail in reference to a local store, but it defies basic logic to suggest a national chain such as Walmart would operate this way, even in Chester County.

[4] Plaintiff asserts the claim for false arrest pursuant to § 1983 against Harris and Baker. However, the Report, Plaintiffs' briefs, and the arguments at the hearing solely address Harris' actions as to this claim. To the extent there is any confusion, this Court also grants summary judgment to Defendant Baker as to Plaintiff's claim for false arrest pursuant to § 1983 finding he did not violate McCree's constitutional rights when he seized him while waiting on EMS to arrive on scene.

[5] Although not raised by the parties, this Court finds Defendant Harris is entitled to raise a qualified immunity offense. *See Dewitt v. Pratt,* 999 F.2d 774 (4th Cir. 1993) (holding on summary judgment that an off-duty police officer working as a party time security guard at Pizza Hut was entitled to qualified immunity).

defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 231-32 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.* at 235, 242.

The qualified immunity test for a warrantless arrest by a police officer is whether a reasonable officer in Defendant's position would have believed he had probable cause to arrest the Plaintiff. *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998); *see also Sowers v. City of Charlotte*, 659 F. App'x 738, 740 (4th Cir. 2016) ("The arresting officer's belief need not be correct or even more likely true than false, so long as it is reasonable."). The question is not whether probable cause actually existed, but whether an objective officer could have reasonably believed that it did. *Gomez v. Atkins,* 296 F.3d 253, 261 (4th Cir. 2002). Probable cause exists when "facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Id.*

As this Court found above, Defendants Harris and Baker possessed probable cause to arrest McCree. Plaintiff must have alleged facts that make it "unjustifiable for a reasonable officer to conclude" that McCree shoplifted to demonstrate the officer Defendants did not have probable cause to arrest him. Plaintiff has not done so. *Brown v. Gilmore,* 278 F.3d 362 (4th Cir. 2002). Harris arrested McCree after he admitted to leaving

the store with the merchandise without paying for it. Plaintiff's only argument to negate Harris' probable cause is that McCree lacked the intent to steal but as previously stated, McCree's state of mind is irrelevant especially where the crime has already been committed and admitted to. An objective officer in Harris' position could have reasonably concluded that there was probable cause to arrest McCree for shoplifting. Further, as to Baker, he was aware McCree had a weapon and was disobeying police commands at the time of his seizure of McCree. Therefore, an objectively reasonable officer in Baker's position could have also concluded he had probable cause to "seize" McCree.

Alternatively, even if the officers violated McCree's Fourth Amendment right because they lacked probable cause to arrest him, the officers would still be entitled to qualified immunity under the second prong of the test. Neither the parties nor this Court have been able to identify any authority that puts "beyond debate" that officers violate the Fourth Amendment by arresting a suspect for shoplifting when the evidence may suggest the suspect lacked the requisite intent to commit the crime. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("…[E]xisting precedent must have placed the statutory or constitutional question beyond debate."); *See also Id.* at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law."). Therefore, Harris and Baker are entitled to qualified immunity as to Plaintiff's Fourth Amendment unreasonable seizure claim.

Thus, this Court agrees with the Report and grants summary judgment to Harris and Baker as to Plaintiff's Fourth Amendment false arrest or unreasonable seizure claim.

### ii.     Excessive Force

Plaintiff asserts a claim of excessive force against Harris and Baker alleging their shooting of McCree violated his Fourth Amendment rights. Harris and Baker argue their shooting of McCree was reasonable because the undisputed evidence shows that each time they fired their guns, McCree was holding a gun himself and pointing it at them.

The Report recommends granting summary judgment as to Plaintiff's excessive force claim finding Harris and Baker's use of force was reasonable under the circumstances. Specifically, the Report finds that Harris and Baker acted reasonably in using deadly force against McCree because the undisputed facts in the record demonstrate a reasonable officer in their respective situations would have believed that McCree posed a threat to their lives or the lives of bystanders. Plaintiff lodges eleven separate objections to the Report's recommendation as to this claim, and Defendants have not objected to the Report's conclusion as to this claim.

A claim that a law enforcement officer has used excessive force during an arrest, investigatory stop, or other seizure of a person is properly analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). The Fourth Amendment test is an objective one; however, it is not capable of precise definition or mechanical application. *Id.* at 396-97. It requires the court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *see also Yates v. Terry,* 817

F.3d 877, 884-85 (4th Cir. 2016); *Yarborough v. Montgomery,* 554 F. Supp. 2d 611, 617 (D.S.C. 2008).

Courts must examine the totality of the circumstances in determining whether the force used was objectively reasonable. *Yates,* 817 F.3d at 885. Therefore, application of this standard "requires careful attention to the facts and circumstances of each particular case." *Graham,* 490 U.S. at 396; *see also Jones v. Buchanan,* 325 F.3d 520, 527 (4th Cir. 2003). In *Graham*, the Supreme Court established several factors to consider, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Yates,* 817 F.3d at 885 (quoting *Graham,* 490 U.S. at 396). Courts must view the evidence "'in full context, with an eye toward the proportionality of the force' in light of all the circumstances." *Yates,* 817 F.3d at 883 (quoting *Rowland v. Perry,* 41 F.3d 167, 173 (4th Cir. 1994)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396.

The Fourth Circuit has recently explained:

> "[W]hen deadly force is used, we have a more specific test for objective reasonableness. In those cases, we consider whether the hypothetical reasonable officer in that situation would have had probable cause to believe that the suspect posed a threat of serious physical harm, either to the officer or to others. That determination must focus on the moment that deadly force was used, not the whole episode. And the justification for deadly force can fall away in seconds. In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment."

*Stanton v. Elliott,* 25 F.4th 227, 233 (4th Cir. 2022).

**1. The Report Allegedly Disregarded the Unreliability of Harris' Testimony**

Plaintiff argues the Magistrate Judge erred by ignoring the unreliability of Harris' testimony regarding his version of events during the subject incident. The crux of Plaintiff's argument is that Harris' testimony is unreliable and therefore, a reasonable jury could conclude that McCree was never armed or that he never pointed his gun at Harris or Baker.

Even assuming Harris' testimony is unreliable as Plaintiff proposes, there is other evidence suggesting McCree had a gun and pointed it at the officers. Specifically, Jeffrey Wallace's affidavit in which he attested that he witnessed McCree go into his car and get his gun. (ECF No. 143-9). Diane Smith also attested that she witnessed McCree with a gun. (ECF No. 143-10). Most significantly, Baker's body camera footage shows Baker pulling a gun away from him. From Plaintiff's response to her objections to the Report, Plaintiff has failed to provide affirmative evidence to support her suggested inferences that McCree did not have a gun or never pointed it at the officers. Instead, the evidence in the record supports the exact opposite conclusion. Accordingly, this Court agrees with the Report that Harris' memory issues, alone, do not create a genuine issue of material fact as to singular question relevant to Plaintiff's excessive force claim—whether the officers' use of deadly force was reasonable. Harris' conflicting statements are substantially outweighed by the other evidence in the record that McCree had a gun.

Therefore, Plaintiff's first objection to the Report's conclusion as to the excessive force claim is overruled.

### 2.  The Report Allegedly Disregarded Material Evidence Regarding the Gun Harris Claimed McCree Pointed at Him

In Plaintiff's second objection, she argues the Report ignored evidence in the record which gives rise to genuine issues of material fact as to whether McCree owned the subject gun, or it was planted on him in the parking lot.

First, Plaintiff argues the Magistrate Judge disregarded the evidence of law enforcement's interview with the record gun owner, Chad Alley, and the testimony of McCree's former college girlfriend.  On February 4, 2020, law enforcement interviewed Chad Alley about the subject gun, and he stated he had never sold a gun to a black man. (ECF No. 174-19) (Recorded Interview with Chad Alley at 00:03:15). However, after the interview, Alley recalled he sold the subject gun to a pawnshop in Rock Hill, South Carolina. *See* (ECF No. 139-10 at 35). Law enforcement followed up with the pawn shop which confirmed Alley pawned the subject gun in 2015, and on April 16, 2016, McCree put the gun on layaway. *Id.*  Plaintiff argues this evidence is disputed because McCree's former girlfriend testified they were living in Mississippi in April of 2016, and McCree did not purchase a gun until 2018 after a mugging incident at their apartment complex. *See* (ECF No. 174-36).

However, Plaintiff's evidence does not give rise to a genuine issue of material fact as to whether McCree possessed a gun in the parking lot in November of 2019. Baker's body camera footage clearly shows him pulling a gun from McCree's person after the shooting. Further, McCree's former girlfriend and several of his family members have testified that McCree owned a gun. Plaintiff's argument is that McCree did not possess a

gun on the day in question because his former girlfriend does not remember him purchasing one until 2018 which is two years after the pawn shop in Rock Hill alleges he put the subject gun on layaway. To follow Plaintiff's logic, this Court would have to assume that SLED's Investigative Report is false or the pawn shop in Rock Hill lied about McCree purchasing the gun, putting it on layaway in April of 2016, and making a final payment in May of 2016. Conveniently, Plaintiff ignores the portion of the SLED Investigative Report that details its interview with the pawn shop employee who advised law enforcement about McCree's payments on the subject gun. While this Court is required to view the facts in the light most favorable to Plaintiff, it is not required to make unreasonable inferences in Plaintiff's favor when the evidence in the record suggests otherwise. Therefore, this portion of Plaintiff's second objection is overruled.

Plaintiff's next argument is that the Magistrate Judge erred in concluding Harris was not a contributor to the DNA profile taken from the subject gun. Plaintiff is attempting to use the lack of DNA evidence to suggest Harris planted the gun on McCree in the parking lot. Plaintiff argues the Report's conclusion is in error because Agent Tolbert testified the SLED Investigative Report was incorrect by stating Harris, Richardson, and Williams-Tobias were specifically eliminated or excluded from the DNA profile developed from the gun. *See* (ECF No. 175-20). But Agent Tolbert did not perform the forensic tests on the gun or author the Forensic Laboratory Report detailing the results of such testing. Catherine Leisy, a forensic scientist, was responsible for this work but Plaintiff does not cite to her

testimony. See (ECF No. 176- 12 & 13).[6] In his deposition, Agent Tolbert admitted he was not an expert in DNA and Plaintiff has failed to identify such an expert. *See* (ECF No. 197-2 at 2).[7] "DNA evidence, with all of its scientific complexities and nuances, simply is not the type of evidence that lay witnesses can competently testify about." *United States v. Davis*, 602 F. Supp. 2d 658, 661-63 (D. Md. 2009) (applying Rule 702 to a motion in limine to suppress DNA evidence). The knowledge needed to competently testify about the Forensic Laboratory Report, and the significance of its results, is "beyond the realm of common experience" and "require[s] the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich,* 232 F.3d at 203 (quoting *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 846 (10th Cir. 1979)). Therefore, Plaintiff cannot simply state conclusions regarding the Forensic Laboratory Report as argument without the proper evidentiary foundation.

However, even assuming as Plaintiff suggests that the Supplemental Forensic Laboratory Report indicates Harris' DNA was on the gun, Plaintiff still cannot overcome the lack of evidence and reason supporting her inference that he planted the gun on McCree. This would require the Court to find that Harris came to possess a gun that could be traced back to McCree, brought this gun to work, and then voluntarily handed McCree a loaded gun in a parking lot full of innocent bystanders when McCree was under arrest for shoplifting. Plaintiff's argument defies common sense.

---

[6] To the extent Plaintiff argues she plans to rely on such testimony at trial, this is insufficient. This Court cannot assume Leisy will testify as Plaintiff purports she will to deny summary judgment. Further, no matter the substance of Leisy's testimony, it still does not establish Harris planted the gun on McCree.

Next, as to Plaintiff's further supporting evidence, Plaintiff first refers to a letter within Harris' employment file which references a stolen gun from 2013. *See* (ECF No. 175-16 at 5). Plaintiff uses this letter to suggest Harris stole a gun from the police department in 2013 and planted the same gun on McCree in 2019. However, Plaintiff does not acknowledge the hole in her theory which is how the gun Harris' allegedly stole from the police department could also be the same gun that was purchased by McCree at a pawn shop in Rock Hill three years prior to this incident. Harris argues the evidence of the letter is inadmissible character evidence pursuant to Federal Rule of Evidence 404. Plaintiff raises the issue of the letter again in her objections to the Report but fails to provide an analysis as to the admissibility of document. Despite the lack of argument on the issue, this Court finds such a letter would likely be inadmissible at trial, and as such, it cannot be considered as evidence for purposes of summary judgment. *Hunter v. Prince George's Cnty.,* 36 F. App'x 103, 106 (4th Cir. 2002) ("only evidence that would be admissible at trial may be considered for summary judgment purposes").

Second, Plaintiff suggests Harris' statement that McCree "had that gun in his ass" suggests McCree was not pointing the gun at Harris and Harris knew it was elsewhere on McCree's person. This Court does not find this statement supports such a contention. Based on a review of the body camera footage, Harris' remark seems to indicate that he did not know where the gun came from because he previously searched him and did not find a weapon, and further, he was concerned he may have other weapons on him. Therefore, the Report was correct to find statement does not support Plaintiff's suggestion that the gun was planted on McCree.

Third, Plaintiff suggests the Report failed to properly consider SLED's conclusion that the subject gun was never fired. While this evidence tends to support Plaintiff's argument, this Court finds the Magistrate Judge did consider such evidence but ultimately disregarded it. The Report finds and this Court agrees that such evidence does not establish McCree never possessed the gun and most importantly, it does not create a genuine issue of material fact as to whether he posed a threat. There is substantial evidence that McCree did possess the gun, and as such, this Court cannot find that he did not pose a threat simply because he had not yet fired the gun. *See Stanton*, 25 F.4th at 234 ("A police officer need not wait for a suspect to shoot before using deadly force.") (quoting *Elliott,* 99 F.3d at 643).

Fourth, Plaintiff argues the body camera footage is unclear as to whether Baker pulled the gun from McCree's hands or whether it was lodged between his body and the ground. When viewing certain versions of the footage within chambers, this Court also found the body camera footage to be unclear; however, at the hearing, this Court was able to observe still frame shots of the footage which clearly show the gun in McCree's possession prior to the shooting. Further, every version of the footage submitted by the parties and reviewed by this Court has clearly shown Baker pulling the gun from McCree's person after he was shot.

Therefore, Plaintiff's second objection to the Report's conclusion as to the excessive force claim is overruled.

### 3. The Report Allegedly Erred in Fully Crediting Harris' Testimony of Being Headbutted

Plaintiff argues the Magistrate Judge erred in fully crediting Harris' uncorroborated claim that McCree assaulted him in the parking lot by headbutting him. Plaintiff asserts she has offered multiple sources of evidence to contradict Harris' testimony that he was headbutted by McCree. Other than Harris' testimony, this Court agrees with Plaintiff that there is no evidence in the record establishing that McCree headbutted him. While the Report relies on Harris' testimony regarding McCree headbutting him as supportive evidence for Harris' use of force, this Court finds this evidence to be immaterial to the question of whether Harris' later use of force was reasonable. The Fourth Circuit instructs this Court to view the events of the subject incident from the perspective of a reasonable officer during the *moment that deadly force was used*, not the whole episode. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (emphasis added). Focusing solely on the moments that Harris fired his shots at McCree, this Court finds Harris' use of force to be reasonable because McCree was armed with a gun in an open parking lot full of bystanders. Eyewitness testimony support Harris' contention that he possessed a gun at this time. *See* (ECF No. 143-9 & 10). Plaintiff's argument does not raise a material issue of fact relevant to the determination of whether Harris' use of force was reasonable.

Therefore, Plaintiff's third objection is overruled.

### 4. The Report Allegedly Erred in Overlooking Facts and Evidence Contradicting Baker's Testimony that McCree Pointed a Gun at Him

Plaintiff argues the only evidence supporting Baker's testimony that McCree threatened him with a gun is his own testimony. Plaintiff argues the Report incorrectly

states Baker's testimony on this point is "uncontradicted" by any evidence. And while the Report points to Baker's body camera footage as supporting evidence, Plaintiff argues the video creates a genuine dispute of material fact as to whether McCree was holding a gun because the footage is unclear.

This Court disagrees with Plaintiff's argument. After reviewing the body camera footage multiple times including the still frame shots during the hearing, the Court finds McCree was holding a gun while walking towards Baker and refusing his commands. McCree does not stop walking until he falls to the ground with a gun on his person which was later determined to be loaded. Based on this video evidence, no reasonable jury could conclude that McCree did not pose a threat to Baker at the time he used deadly force to subdue McCree.

Therefore, Plaintiff's fourth objection is overruled.

### 5. The Report Allegedly Erred in Favorably Assessing Baker's Credibility

Plaintiff argues the Magistrate Judge also erred in assessing Baker's credibility when he made false exculpatory statements after the shooting. Plaintiff asserts Baker stated McCree "pulled a gun and started shooting people." (ECF No. 174-33). Plaintiff contends the Magistrate Judge improperly credited Baker's false statement in the light most favorable to him when it should be considered by the jury as evidence of Baker's guilt.

Even assuming Baker's statement was false as Plaintiff suggests, Plaintiff has failed to demonstrate how this statement creates a genuine issue of material fact as to whether the officers were reasonable in shooting McCree. The Fourth Circuit has instructed this Court to focus on the moment the deadly force was used and to avoid hindsight bias. *Stanton v.*

*Elliott,* 25 F.4th 227, 233 (4th Cir. 2022). Baker made this allegedly false statement after the shooting. Accordingly, Baker's statements, even though assumed false, are irrelevant to the determination of whether him shooting McCree was reasonable or not.

Therefore, Plaintiff's fifth objection is overruled.

### 6. The Report Allegedly Erred in Disregarding Evidence of Law Enforcement Improperly Instructing Baker on How to Answer Material Questions Regarding the Alleged Gun in McCree's Hands

Plaintiff argues the Magistrate Judge erred in failing to consider evidence of Baker's videotaped interview with SLED agents. Plaintiff asserts this evidence could cause a jury to conclude that Baker's uncorroborated testimony regarding his interaction with McCree is untruthful.

However, Baker's testimony is not uncorroborated. Baker's testimony is supported by the body camera footage which shows McCree continuously walking towards Baker with a gun until he falls to the ground. Thus, even assuming Baker's interview is unfavorable evidence towards him, it does not create a genuine issue of material fact as to the events that occurred on November 23, 2019 as depicted on the body camera footage.

Therefore, Plaintiff's sixth objection is overruled.

### 7. The Report Allegedly Disregarded Evidence the Gun was Never Fired

Plaintiff argues the fact that the subject gun was never fired is further supporting evidence that McCree never possessed the gun. Assuming it is true that McCree assaulted Harris and threatened both Harris and Baker with a gun, Plaintiff argues it is hard to conceive a variation of events where McCree would also not fire the gun. Plaintiff asserts

this evidence is sufficient for a jury to conclude that McCree never possessed the gun, or if he did, it was inaccessible to him.

This Court disagrees that the fact the gun was not fired supports Plaintiff's suggestion that McCree never possessed the gun. Baker's body camera footage shows the gun on McCree's person. Additionally, Baker and Harris testified that McCree pointed the gun at them. The fact that McCree did not fire the gun does not diminish the threat presented by McCree possessing a gun in a parking lot full of customers while under arrest and continuously disobeying commands from law enforcement.

Therefore, Plaintiff's seventh objection is overruled.

### 8. The Report Allegedly Improperly Credited Baker's Testimony over Conflicting Audio Evidence

Plaintiff argues the Report failed to appropriately consider the audio evidence from Baker's dashboard camera in his police car on which Baker can be heard ordering McCree to "put [his] hands up" because Plaintiff asserts this evidence further supports the suggestion that McCree did not possess the subject gun.[8] Plaintiff argues a reasonable jury could conclude that McCree did not have a gun because Baker would not have ordered McCree to put his hands in the air if he did have a gun. Further, Plaintiff argues the Report inappropriately construed McCree's behavior on Baker's body camera footage as refusing

---

[8] This Court has reviewed several versions of the dashboard camera footage from Baker's police car and has been unable to hear Baker order McCree to "put [his] hands up." However, viewing the facts in the light most favorable to Plaintiff, this Court will assume the footage contains such statement by Baker.

to comply with a police order when it is possible that McCree was seeking Baker's help as he was injured from being shot.

While summary judgment requires this Court to make all reasonable inferences from the facts in favor of Plaintiff, this Court is unwilling to make unreasonable inferences or inferences the facts do not support. This Court cannot agree that Baker ordering McCree to put his hands up supports the inference that McCree was unarmed because Baker's body camera footage clearly shows that he possessed a gun. Additionally, this Court cannot infer that the reason McCree did not stop walking towards Baker was because he needed help. Not only is this inference unreasonable, but it also requires this Court to assume that McCree was injured at the time he was walking towards Baker. There is no evidence in the record to support this assumption. Additionally, it requires this Court to view the facts from the perspective of McCree as opposed to Baker in contradiction to clearly established Fourth Circuit law for excessive force claims. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene…).

Therefore, Plaintiff's eighth objection is overruled.

### 9.  The Report Allegedly Disregarded Evidence of Baker's Guilt

Plaintiff argues the Report improperly disregarded evidence that Baker considered suicide after the subject incident. Plaintiff argues Baker's suicide ideation is evidence of Baker's guilt from shooting an unarmed, handcuffed McCree.

This Court finds Plaintiff's argument misplaced. The focus of this Court's inquiry is on the objective perspective of a reasonable officer at the time of the subject event.

31

Plaintiff cannot create a genuine issue of material fact by asking this Court to consider evidence which occurred after the subject event. Baker's thoughts post-shooting have no bearing on whether his use of deadly force against McCree was reasonable on November 23, 2019, in the Walmart parking lot. Plaintiff cites to a Fourth Circuit case finding suicide ideations to be evidence of guilt as support for her argument. The Court has reviewed the Fourth Circuit's opinion in this case and finds it is inapposite to the circumstances at hand. *See Tug Raven v. Trexler,* 419 F.2d 536, 543 (4th Cir. 1969) (suit for death of seaman in dockside fire during unloading of barge filled with gasoline and admitting evidence of fellow crew member's suicide as indication of guilt.).

Therefore, Plaintiff's ninth objection is overruled.

### 10. The Report Allegedly Erred in Fully Crediting Witness Affidavit Statements While Disregarding Conflicting Statements

Plaintiff argues the Report erred in fully crediting the affidavits of Jeffrey Wallace and Diane Smith in finding McCree "retrieved a gun" over evidence which contradicted these statements. Plaintiff presents several arguments to undermine the credibility of the witnesses' statements. Additionally, Plaintiff argues the Magistrate Judge erred in relying on hearsay statements from unidentified witnesses to reach her recommendation in the Report.

Plaintiff presented almost identical arguments in her response in opposition to defendants' motions for summary judgment which the Report addressed and denied. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992) (A district court is only required to conduct a *de novo* review

of the specific portions of the Magistrate Judge's Report to which an objection is made). In the Report, the Magistrate Judge explains the inconsistencies that Plaintiff points out are immaterial and unsupported by any contradictory evidence that could create a genuine issue of material fact. Further, the Report states and this Court agrees Plaintiff has failed to identify any evidence supporting her theory that McCree never held a gun or pointed it at officers. As such, no reasonable jury could conclude that the Defendant officers' use of deadly force was unreasonable.

Therefore, Plaintiff's tenth objection is overruled.

**11. The Report Allegedly Erred in Reviewing Dr. Kim Collins' Testimony**

Plaintiff argues the Report incorrectly concludes that the testimony of forensic pathology expert, Dr. Kim Collins contradicts Plaintiff's arguments that McCree did not pose a threat. Plaintiff presented similar arguments in her response in opposition which the Report addressed and denied. The Report denies Plaintiff's arguments finding Plaintiff fails to point to any evidence in the record to support her theories and this Court agrees.

Plaintiff's first theory is that Harris shot McCree before he obtained his gun. In support of this argument, she states Dr. Collins concluded the first two gunshot wounds were the ones to the right arm and left hip and further, that these wounds were likely caused by Harris. Plaintiff contends this testimony along with the SLED analysis identifying the positions of the shell casings at the scene create a reasonable inference that Harris shot McCree during the sixty second period wherein Harris lost sight of McCree and McCree was allegedly obtaining his gun. However, Plaintiff presents no eyewitness testimony, video camera footage, or other physical evidence to support such an inference. Based solely

on the location of McCree's wounds and the position of the shell casings in the parking lot, Plaintiff asks this Court to infer McCree was not armed when Harris was shooting at him. There is not a single piece of evidence in the record that would allow this Court to make such an inference. Without more, this evidence does not create a genuine issue of material fact as to whether McCree was armed at the time of Harris' shooting. Plaintiff's theory is merely a suggested version of events that lacks evidentiary support in the record.

Plaintiff's second theory suffers from the same insufficiencies. Plaintiff argues Baker shot McCree in the left hip, a wound that would have been sustained while McCree was walking perpendicular to Baker and did not pose a threat to him. McCree's position at the time of the shooting does not create a genuine issue of material fact as to whether he posed a threat because McCree was armed while walking towards an officer and in a parking lot full of bystanders. Even assuming McCree was perpendicular to Baker at the time he fired his first shot, McCree still posed a threat. This Court makes this assumption to view the facts in the light most favorable to Plaintiff, but after reviewing the body camera footage countless times, this Court is unable to observe McCree in a perpendicular position.

Additionally, Plaintiff argues the Magistrate Judge misapplied the facts and inferences drawn from the gunshot wound to McCree's right arm. Plaintiff contends the significance of Dr. Collins' testimony as to McCree's right arm wound is that he would have been unable to use the arm and fire a weapon, not that the bullet entered through the front of the arm. Because it would have been difficult for him to use this arm to fire his weapon, Plaintiff asserts McCree did not pose a threat at the time Baker shot him in the chest. Plaintiff's argument fails to consider this Court is required to view the subject events

34

from the objective perspective of a reasonable officer in Baker's position. A reasonable officer would not have known that McCree was physically unable to fire his gun. A reasonable officer would have only seen a suspect with a gun advancing towards him.

Plaintiff's suggested versions of events from November 23, 2019, does not create genuine issues of material fact to allow this Court to deny summary judgment. Therefore, Plaintiff's eleventh objection is overruled.

As to Plaintiff's excessive force claim against Harris and Baker, this Court agrees with the Report and finds that Plaintiff has failed to show a genuine issue of material fact as to whether Harris and Baker exercised reasonable force against McCree. The Report points to *Elliott v. Leavitt* as illustrative and this Court agrees. 99 F.3d 640, 641 (4th Cir. 1996). In *Elliott*, a police officer, Leavitt, initiated a traffic stop of plaintiff, Elliott, who admitted to drinking. *Id.* Leavitt handcuffed Elliott and called for backup. *Id.* He also searched Elliott and did not find a weapon. *Id.* When the second officer arrived, he assisted Leavitt in placing Elliott in the police car with the seatbelt fastened, door closed, and window rolled up. *Id.* at 642. As the officers were talking by the passenger's side of the car, they noticed movement in the car and looked to find Elliott with his finger on the trigger of a gun pointed at officers. *Id.* Elliott had released the seatbelt and twisted his arms to the right side of his body to point a gun at officers. *Id.* Leavitt ordered Elliott to drop the weapon and when he refused, the officers opened fire killing Elliott. *Id.*

Like this case, Elliott's estate argued he did not pose a real threat to officers because his hands were handcuffed behind his back. But instead of being in a parking lot full of innocent bystanders like McCree, Elliott was in a police car with his seatbelt fastened and

window rolled up. In its reversal of the district court's denial of qualified immunity, the Fourth Circuit disregarded Plaintiff's "lack of threat" argument finding Elliott posed a threat to the officers the moment he pointed a gun at them from only a few feet away. *Id.* at 642. In such situations, the Court stated "[t]he Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists." *Id.* Further, as to the district court's contention that Elliott's intention was unclear and the officers could have retreated, the Fourth Circuit stated:

> **This suggestion that the officers might have responded differently is exactly the type of judicial second look that the case law prohibits.** Furthermore, even if Elliott's specific intent were relevant, it is not clear what other evidence of intent the district court would require—Elliott was pointing his gun at the officers with his finger on the trigger and ignored the order to drop his weapon. Given the officers' proximity to the car, it is also unclear that they could have moved away from the car quickly enough to avoid being shot.

*Id.* at 643 (emphasis added).

Here, this Court agrees with the Report that the situation confronted by Harris and Baker provides an even stronger justification for their use of deadly force than the situation facing the officers in *Elliott.* Like Elliott, McCree was handcuffed but he was not confined in a car with a seatbelt fastened. McCree was in a parking lot full of innocent bystanders with a gun. When confronted by Harris and Baker, McCree refused obey commands and drop his weapon. Significantly, Baker's body camera footage shows McCree continuing to walk towards Baker despite Baker pointing his gun at him and ordering him to drop his weapon. Based on these facts, this Court agrees with the Report and finds that Harris and

36

Baker's belief that McCree posed a threat to their lives or the lives of those in the parking lot was reasonable.

Therefore, this Court adopts the Report and grants summary judgment as to Plaintiff's excessive force claim against Harris and Baker.

### B. Qualified Immunity as to Plaintiff's Excessive Force Claim

Although not considered by the Report, this Court will address whether Harris and Baker would be entitled to qualified immunity. Assuming McCree's constitutional right to be free from the use of excessive force was violated, this Court must next "evaluate whether the right at issue was 'clearly established' at the time of the officers' conduct. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018).

In determining whether the right violated was clearly established, the court must define the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). The Court must analyze the specific contours of the right to determine whether it was "sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Creighton*, 483 U.S. at 640). An officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. Rather, the doctrine protects officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted).

Defined at the specificity required by the Supreme Court, the question is whether it was clearly established in November of 2019 that an individual had a right to be free from

the use of deadly force when: (1) the individual was placed under arrest; (2) the individual was handcuffed and fleeing or evading arrest in a public parking lot; and (3) the individual was armed with a gun. After reviewing the evidence in the record including video footage from Baker's body camera and considering Fourth Circuit and Supreme Court case law to date, this Court is satisfied that the answer to this question is no. This right was not clearly established such that the Defendant officers in this case would know that their use of deadly force was a violation of McCree's Fourth Amendment right.

The Fourth Circuit Court of Appeals has held  a police officer may use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others. *Elliott,* 99 F.3d at 642 citing *Tennessee v. Garner,* 471 U.S. 1 (1985).  Baker's body camera footage firmly establishes that McCree posed a threat because he was armed with a gun and disobeying police commands at the time of the shooting. In rebuttal, Plaintiff has only offered confusing and convoluted theories as to possible scenarios that could have occurred on the subject day such as Harris planting a gun on McCree. However, Plaintiff's theories are without evidentiary support and cannot negate the physical evidence showing McCree with a gun walking towards an officer. As to any argument that McCree could not have been a threat because he was handcuffed, the Fourth Circuit has squarely foreclosed this argument in *Elliott* as it found the suspect became a threat the moment he pointed a gun at officers. *Id.* at 643. And this Court finds the same is true in this case.

Additionally, although not raised by Plaintiff, it could be argued that the Defendant officers could have used less than deadly force. However, this Court cannot ignore the fact

that McCree continued advancing towards Baker with a gun while ignoring his commands to stop. McCree's actions establish that Baker could not have used any degree of force less than the deadly force he exercised to stop McCree.

Therefore, even assuming a constitutional violation occurred, Harris and Baker would be entitled to qualified immunity.

### C. Bystander Liability

Plaintiff has asserted a claim for bystander liability against Harris and Baker. The Report recommends dismissing this claim because it concluded there was no underlying constitutional violation. This Court agrees.

To succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. *Stevenson v. City of Seat Pleasant, Md.,* 743 F.3d 411, 417 (4th Cir. 2014).

Plaintiff objects to the Report's recommendation to grant summary judgment as to this claim because there is no underlying constitutional violation. Within her objection, Plaintiff requests this Court consider Plaintiff's claim. Plaintiff does not explain the basis of her objection, and therefore, it is nonspecific. "Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)).

Therefore, this Court adopts the Report and grants summary judgment as to Plaintiff's bystander liability claim.

### D. Corporate Liability

Plaintiff has also asserted § 1983 Fourth Amendment claims against Walmart. Similar to Plaintiff's claim of bystander liability, the Report recommends granting summary judgment as to this claim because Plaintiff has failed to show an underlying constitutional violation. This Court agrees.

Corporations can be held liable under § 1983 if an official policy or custom of the corporation causes a deprivation of federal rights by someone acting under color of state law. *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 728 (4th Cir. 1999); *see also Rodriguez v. Smithfield Packing Co.,* 338 F.3d 348, 355 (4th Cir. 2003) (stating that the principles of § 1983 municipal liability can apply equally to private corporations that employ police officers). However, a policy or custom alone cannot sustain a § 1983 claim against a corporation absent an underlying constitutional violation. *Cf. Young v. City of Mount Ranier,* 238 F.3d 567, 579 (4th Cir. 2001).

As Plaintiff failed to show McCree's Fourth Amendment rights were violated, this Court agrees with the Report and grants summary judgment as to Plaintiff's § 1983 claims against Walmart.

### E. Plaintiff's State Law Claims

As Plaintiff's only remaining claims are state law claims, the Report recommends this Court decline to exercise supplemental jurisdiction over them and remand these state law claims to the Chester County Court of Common Pleas because they involve complex issues of state law. *See* 28 U.S.C. § 1367(c) (authorizing a district court to decline to exercise jurisdiction over a supplemental claim).

"[D]istrict courts may decline to exercise supplemental jurisdiction ... if-- ... the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). District courts have discretion in making this determination and "should consider and weigh [several factors, including] ... judicial economy, convenience, fairness, and comity...." *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 (1988).

Plaintiff agrees with the Report's recommendation and Defendants' have each filed objections urging this Court to retain these claims and grant summary judgment as to them as well. In sum, Defendants argue against remanding these claims because it will cause unnecessary delay in the resolution of the case, require the parties to expend additional unnecessary resources, and force another court to familiarize itself with the facts and issues of this case.

Upon consideration of the record, this Court observes that there are both reasons to exercise supplemental jurisdiction and reasons to decline to exercise supplemental jurisdiction over Plaintiff's state law claims for false arrest, negligence, gross negligence, wrongful death and survival, and negligent hiring, supervision, and retention. As for reasons to exercise supplemental jurisdiction, this Court recognizes that retaining jurisdiction over these state law claims would promote judicial economy.

On the other hand, the factors of convenience, fairness, and comity weigh in favor of remanding the state law claims. The Chester County Court of Common Pleas is both a convenient and fair forum for the state law claims because Plaintiff elected to file suit in South Carolina state court and Defendants are South Carolina Citizens. (ECF No. 1). While these claims have no connection to federal interests or policies, South Carolina has a strong

interest in deciding the state law issues that remain. If summary judgment were to be denied on the remaining state law claims, it would be more appropriate for these claims to be tried in a state court. Considerations of comity support remand. Therefore, Defendants' objections are overruled, and the remaining state law claims will be remanded to Chester County Court of Common Pleas.

## IV.     CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto along with Plaintiff's consolidated Reply, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. Accordingly, this Court adopts the Report and Recommendation in all regards. (ECF No. 211). Thus, Defendants Nicholas Harris, Justin M. Baker, Wal-Mart Stores, East L.P., and Walmart, Inc.'s motions for summary judgment (ECF Nos. 139, 140, 144) are granted as to Plaintiff's federal civil rights pursuant to 42 U.S.C. § 1983 which are hereby dismissed. Further, Defendant City of Chester's motion for summary judgment is denied. (ECF No. 143).

As to Plaintiff's remaining state law claims[9] for false arrest or false imprisonment, negligence, gross negligence, and wrongful death and survival asserted against all Defendants, these claims are remanded to the Court of Common Pleas for Chester County, South Carolina. Additionally, Plaintiff asserted state law claims for negligent hiring,

---

[9] Defendant Nicholas Harris' counterclaim for assault and battery against Plaintiff is also remanded to the Court of Common Pleas for Chester County.

supervision, and retention solely against Defendant City of Chester and these claims are also remanded to the Court of Common Pleas for Chester County, South Carolina.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

February 8, 2023                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge